ORIGINAL

*FILED*

2019 NOV 19 PM 7: 28

COGAN, J.

UNITED STATES EASTERN DISTRICT COURT

STATE OF NEW YORK

Jaguar Ateret El Bai

Emani Pamela Taylor Bey

246 Decatur Street

Brooklyn, New York 11233



CV19-6702

RECEIVED

NOV 1 9 2019

PRO SE OFFICE

Plaintiff

V.

CRIMINAL COURT CITY OF NEW YORK, COUNTY OF KINGS, SUPREME
COURT STATE OF NEW YORK, COUNTY OF KINGS, OFFICE OF COURT
ADMINISTRATION, NEW YORK CITY DEPARTMENT OF FINANCE, CITY
OF NEW YORK POLICE DEPARTMENT, NEW YORK CITY SHERIFF
DEPARTMENT, MICHAEL FICCHI, JR., IRA MILLER, JEFFREY MILLER,
ARNOLD LUDWIG, GREGORY PHILLIPS, ELEANOR PHILLIPS, NEW YORK
STATE EASTERN DISTRICT BANKRUPTCY COURT, KINGS COUNTY
DISTRICT ATTORNEY, DEBRA DOBBINS. AVRUM ROSEN, CARLA CRAIG,
BANK OF AMERICA, WELLS FARGO, US NATIONAL ASSOCIATION,
ESTATE OF VERA ALEXANDER

<u>Defendants</u>

**LAND DESCRIPTION:**

**Decatur Street No: 246**

**Brooklyn, New York [postal exempt]**

**RELATED CASES:**

**SUPREME COURT STATE OF NEW YORK: Case Number: 47054/2007**

**BANKRUPTCY COURT Case Number(s): 17-46112,**

**18-CV01768, 18-CV01791, 19-CV1392**

**CRIMINAL COURT Case Number: CR-003963-19KN**

*2*

## A LIVING TESTIMONY IN THE FORM OF AN

## AFFIDAVIT

1. I never had full disclosure; you never told me this was a foreign corporation and the lawyers that work for The State of New York are foreign agents.

2. You led me into a fraudulent contract." (I demand the bond numbers of everyone involved).

3. As a member of the Yamasee Nation of Native Americans, my tribal nationality is Sovereign Moor. I have been taken advantage of.

4. I am Native American and not subject to your jurisdiction.

5. This is Mail Fraud.

6. I had no contract with this foreign corporation.

7. You are continuing to try to communicate with me; that is a violation of the "Fair Debt Collection Act".

8. At present, both the Municipal and Territorial governmental services corporations are in bankruptcy proceeding. The UNITED STATES is insolvent and under liquidation and the USA, Inc. is under Chapter 11 reorganization.

9. A foreign corporation, a legal fiction which cannot talk, cannot demand anything from any living soul. As a foreign corporation you have a Dun and Bradstreet number which is listed on Wall street which means you are not a constitutional entity.

10. A false representation of a matter of fact, whether by word or conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceived and is intended to deceive another so that he shall act upon it to his legal injury. Anything calculated to deceive, whether by a single act or combination, or by the suppression of truth, or by suggestion of what

3

**ATTORNEY FOR BANK,**

<u>Defendant(s)</u>

**Regarding Related Cases:**

**SUPREME COURT STATE OF NEW YORK COUNTY QUEENS:  INDEX NO:**

**Complaint and Status**

I am not now or never have been a part of this corporate state or their judicial system.   My ancestors have been in this country for over ten thousand years.  We were here (Native Americans) before Europeans arrived in 1492.  We were here before statutes and codes, before the Constitution which was copied from a Black Moor document.  If you must refer to the Constitution, a good place to start would be Article 6 of the Constitution which states that treaty law is Supreme law of the land.   The United States of America is a foreign state and its agency the Department of Justice is a foreign agent and did not serve me under Title 28 Sections 1604 to 1607, they did not proceed under Title 22 CFR Sections 9212 to 9232 and they did not file a claim against me with the Department of State to have the Department of State remove my immunity and they did not file a case under Title 28 Section 1330 against me.   They violated all of my Native American Treaty rights.

**4**

1. I am asking Judges Lawrence Knipel, Carla Craig and David Yavinsky to be the fiduciary and reserve all of the rights under UCC 1-207 and UCC 1-308.

2. According to Title 42 Statute 1983 anyone can be sued who is acting under the color of law. The reason I am asking for the amount of money damages is because I think a message should be sent to everyone in North America that you should not rape, murder, pillage or do treason, sedition, involuntary servitude, slavery, terrorism, fraud, extortion, grand theft, robbery, conspiracy and racketeering against a Native American Moor.

3. A party having superior knowledge will take advantage of another's ignorance of the law to deceive him by studied concealment or misrepresentation can be held responsible for that conduct. (FINA SUPPLY, Inc. v. Abilene National Bank, 726 S.W. 2D 537, 1987).

4. Fraud "vitiates the most solemn contracts, documents and even judgments" (U.S.V. Throckmorton, 98 U.S. 61 at page 65.) Fraud is defined in BLACK'S LAW DICTIONARY 6th edition on page 660. (An intentional perversion of truth for the purpose of inducing another's reliance upon it to part with some valuable things belonging to him or to surrender a legal right.)

5.

5. A false representation of a matter of fact, whether by word or conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceived and is intended to deceive another so that he shall act upon it to his legal injury. Anything calculated to deceive, whether by a single act or combination, or by the suppression of truth, or by suggestion of what is false, whether it be by direct falsehood or innuendo, by speech or silence, word or mouth or look or gesture.

6. I am looking for compensation from Title 42 Statute 1983 in the amount of **Twenty Million Dollars**.


I am here for settlement and closure.

EMANI PAMELA TAYLOR BEY

is false, whether it be by direct falsehood or innuendo, by speech or silence, word or mouth or look or gesture.

11.    I am looking for compensation from Title 42 Statute 1983 in the amount of **Twenty Million Dollars**.

(See attached documents)

I Am: _____

Your Name , All Rights Reserve, UCC 1-308

Witness: _____

Your Name, All Rights Reserve, UCC 1-308

Michael Ficchi, Jr.,
705 5th Avenue
Brooklyn, New York 11205

SUPREME COURT STATE OF NEW YORK
COUNTY OF KINGS
Charles A. Smalls: Dba Chief Clerk
360 Adams Street Rm 189
Brooklyn, New York 11201

Sheriff
Dba Joseph Fucito
33-10 Starr Avenue
Long Island City, NY

CRIMINAL COURT CITY OF NEW YORK
DAVID YAVINSKY
120 SCHEMERHORN STREET
BROOKLYN, NEW YORK 11201

OFFICE OF COURT ADMINISTRATION
JANET DIFIORE
28 BEAVER STREET
NEW YORK, NEW YORK 10004

NEW YORK CITY DEPARTMENT OF FINANCE
JACQUES JIHA
1 CENTRE STREET RM 500
NEW YORK, NEW YORK 10007

NEW YORK CITY POLICE DEPARTMENT
COMMISSIONER JAMES P. O'NEILL
1 POLICE PLAZA PATHWAY
NEW YORK, NEW YORK 10007

NEW YORK CITY SHERIFFS DEPARTMENT
JOSEPH FUCITY / SHERIFF
30-10 STARR AVENUE
LONG ISLAND CITY, NEW YORK 11101

IRA MILLER
26 COURT STREET RM 400
BROOKLYN, NEW YORK 11201

ARNOLD LUDWIG
26 COURT STREET RM 400
BROOKLYN, NEW YORK 11201

ATTLEBORO DISTRICT COURT
GREGORY PHILLIPS
88 MAIN STREET
ATTLEBORO, MA 02703

ELEANOR PHILLIPS
ATTLEBORO DISTRICT COURT
88 MAIN STREET
ATTLEBORO, MA 02703

NEW YORK STATE EASTERN DISTRICT
BANKRUPTCY COURT
CARLA CRAIG
270 CADMAN PLAZA EAST
BROOKLYN, NEW YORK 11201

DEBRA DOBBINS
38 NEW STREET
HUNTINGTON, NEW YORK 11743

AVRUM ROSEN
38 NEW STREET
HUNTINGTON, NEW YORK 11743

WELLS FARGO
JOHN SHREWSBERRY CFO
101N PHILLIPS AVENUE
SIOUX FALLS, SOUTH DAKOTA 57104

JEFFREY MILLER
32 BROADWAY 17TH FLOOR
NEW YORK, NEW YORK 10007

KINGS COUNTY DISTRICT ATTORNEY
ERIC GONZALEZ
320 JAY STREET
BROOKLYN, NEW YORK 11201

US BANK NATIONAL ASSOCIATION
MARGARET SMYTH
425 WALNUT STREET
CINCINNATI, OHIO 45202

BANK OF AMERICA
PAUL DONOFRIO/CFO
100 N. TRYON STREET
CHARLOTTE, NORTH CAROLINA

NOTARY ACKNOWLEDGEMENT

SUBSCRIBED AND SWORN TO BEFORE ME this _/9th_ of _November_,

2019, ex Rel EMANI PAMELA TAYLOR, Emani Pamela Taylor Bey personally

known to me or upon identification to be the man or woman whose name

subscribed to the within instrument Affidavit.

_____ Seal;

Notary Public  **DANIEL MALDONADO**
               **NOTARY PUBLIC-STATE OF NEW YORK**
               **NO. 01MA5077596**
               **QUALIFIED IN KINGS COUNTY**
               **MY COMMISSION EXPIRES 05-12-20** 2 3

My commission expires _5/21/2023_

# ATTACHMENT

# UNITED STATES SUPREME COURT CASE

# <u>UNITED STATES v. TURNER'S HEIRS</u>

**EMPRESS VERDIACEE...**

*United States vs. Turner's heirs.*

I, Theodore H. McCaleb, judge of the United States district court for the district of Louisiana, do hereby certify, that Needler R. Jennings, who subscribed the above certificate, is the clerk of the said court, and that full faith and credit are due and ought to be given to his attestations as such, and that the above is in due form of law.

Given under my hand and seal, this 15th day of Nov., A. D. 1848.

THEO. H. McCALEB, [SEAL.]
*U. S. Judge.*

*Citation of Appeal.*

The United States of America, to the Heirs of Henry Turner, greeting:

You are hereby cited and admonished to be and appear at a Supreme Court of the United States, to be holden at the city of Washington on the first Monday of December next, pursuant to an order of appeal filed in the clerk's office of the district court of the United States for the district of Louisiana, wherein the United States of America are appellants, and you are appellees, to show cause, if any there be, why the judgment rendered against the said appellants, and in your favor, should not be corrected, and why speedy justice should not be done to the parties in that behalf.

Witness the honorable Roger B. Taney, chief justice of the Supreme Court of the United States, at New Orleans, this twelfth day of September, in the year of our Lord one thousand eight hundred and forty-eight.

THEO. H. McCALEB,
*U. S. Judge.*

Returned into court Oct. 20, 1848.

ROB'T M. LUSHER, *D'y Clerk.*

*Marshal's return.*

Received September 13th, 1848, and on the 26th inst. served a copy of the within citation of appeal on Prentiss & Finney, esqrs., by handing the same to Prentiss, esq., in the city of New Orleans. Ret'd October 20th, 1848.

J. PRADOS, Jr.,
*D'y U. S. Marshal.*

Filed 4 December, 1848.

Twuana N. Janvier 11/13/19(c)
Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 2021(@)

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21
11.13.2019

Daniel Maldonado 11/13/19
DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-13-20 - 22

**EMPRESS VERDIACEE...**

*United States vs. Turner's heirs.*

the surveyor general of said province, and annexed to plaintiffs' petition as exhibit "C," to wit, plat No. 1, on the right bank of the river Ouachita, commencing or starting five arpens below the mouth of the bayou Cheniere au Tondre, till it reaches the bayou Calumet, with the depth necessary to complete or produce one hundred and forty thousand superficial arpens. The second plat, marked No. 2, on the left bank of the same river Ouachita, to start or begin two leagues below the Fort Miro, at the point called l'Aioe, till it reaches the prairie de Lee, with the necessary depth to complete or produce sixty thousand arpens superficial. The third plat, marked No. 3, to start in front of the bayou de la Loutre, and from thence on a line running south sixty-five degrees east to the bayou Siar, which line the bayou Siar and Marquis Barthelemy and the Ouachita bound said plat No. 3; and the plat No. 4, on the right bank of the Ouachita, to start in front of the entrance of bayou Barthelemy, running down the river till it reaches the bayou la Loutre; which plats, Nos. 3 and 4, with the corresponding or necessary depth, are to complete eight thousand three hundred and forty-four superficial arpens, and added to the plats Nos. 1 and 2, form together the superficial total of two hundred and eight thousand three hundred and forty-four superficial arpens, equal to the foregoing thirty leagues, at the rate of two thousand five hundred toises or fathoms per side for each league.

And being further satisfied that said petitioners are the legal and true owners, by title regularly derived from the said Marquis de Maison Rouge, of such portions of said grant as are claimed by them in their said petition; and being satisfied that said grant was and is a good and valid grant from the Spanish government to the said Marquis de Maison Rouge, and that the same is protected by the treaty made between the United States and the French republic on the thirteenth day of April, 1803, as well as by the laws of nations and the Constitution and laws of the United States.

Now this court, acting under and by virtue of the act of Congress of 26th May, 1824, entitled "An act enabling the claimants to lands within the limits of the State of Missouri and Territory of Arkansas to institute proceedings to try the validity of their claims," and also an act, passed on the 17th day of June, 1844, entitled "An act to provide for the adjustment of land claims within the States of Missouri, Arkansas, and Louisiana, and in those parts of the States of Mississippi and Alabama south of the 31st degree of north latitude, and between the Mississippi and Perdido rivers," doth order, adjudge, and decree, and it is hereby ordered, adjudged, and decreed, that the petitioners, Sarah Turner, Eliza Turner, Henry Turner, and George W. Turner, are the true and lawful owners of, and have good title against the United States, the defendants, in and to all the lands and hereditaments claimed by them in their said petition; which lands are described as follows, on a map or survey executed on the 27th March, 1820, by one John Dinsmore, by order of the surveyor general of the United States south of the Tennessee river, which map is marked exhibit "A," to wit, lots numbers four, five, six, and nine, lying on both sides of said river Ouachita, and

Twuana N. Janvier
Commissioner of Deeds #: 3-7563
Queens County
Expiration Date: 3/1 20 21

11/13/19

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21
11.13.2019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20-23
11/13/19

## RETURN OF THE ANCIENT ONES...

*United States* vs. *Turner's heirs.*                                        1577

within tracts Nos. one and two of said grant and survey; also lots Nos.
ten and eleven on the west side of said river, and six hundred and thir-
ty-two acres of that part of said lot ten which lies on east side of said
river, all within said tracts one and two; also one undivided fourth part
of tracts three and four of said grant.

It is further ordered, adjudged, and decreed, that in case said lands
so claimed by said plaintiffs in their said petition, or any part or por-
tions thereof, shall have been sold by the United States, or otherwise
disposed of, said plaintiffs shall be, and are hereby, authorized to enter,
in any land office in the State of Louisiana, in parcels conformable to
sectional divisions and subdivisions, a like quantity of public lands,
after the same shall have been offered at public sale.

Judgment rendered and signed June 19th, 1848.
      (Signed)                THEO. H. McCALEB, [SEAL.]
                                        U. S. Judge.

And afterwards, to wit, on the 22d of June, A. D. 1848, the follow-
ing motion for, and order of, appeal were entered and filed of record:

*Order of appeal.*

TURNER'S HEIRS  }
        vs.
THE UNITED STATES. }

In the district court of the United States, for the district of Louisiana.

Present, the honorable Theodore H. McCaleb, judge.

May term, 1848.—Thursday, 22d June, 1848.

On motion of Thomas J. Durant, attorney of the United States for
the district of Louisiana, it is ordered by the court that an appeal in
this case be allowed to the Supreme Court of the United States, at
Washington, returnable to the next succeeding term thereof.

Office of the clerk of the United States district court for the district of
Louisiana.

I, Needlet R. Jennings, clerk of the above entitled court, do hereby
certify, that the foregoing one hundred and sixty-seven pages, together
with the two plats of survey, one (exhibit A) inserted between pages
100 and 101, and the other between pages 108 and 109, form a true,
faithful, and correct transcript of all the proceedings, process, pleadings,
documents, and other matters on file and of record in a certain case in
chancery, wherein the Heirs of Henry Turner are plaintiffs, and the
United States of America are defendants, No. 32 of the docket of land
causes of the said court.

In testimony whereof I have hereunto set my hand and caused to be
        affixed the seal of the said court, at the city of New Orleans,
[SEAL.]  this fifteenth day of November, A. D. 1848, and of the inde-
        pendence of the United States of America the seventy-third
        year.

                                N. R. JENNINGS, *Clerk.*

Twuana N. Jenner    11/13/19
Commissioner of Deeds #577353
Queens County
Expiration Date: 8/1/2021

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21
11.13.2019

DANIEL MALDONADO    11/13/19
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA6077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 06-12-20 23

# THE GRANT

The Baron de Carondelet, knight of the order of St. John, marshal de camp of the royal armies, governor general, vice patron of the provinces of Louisiana and West Florida, inspector of troops, &c.

For as much as the Marquis de Maison Rouge is now completing the establishment of the Washita, which he is authorized to make for thirty families by the royal order of July 14th, 1794, and desirous to remove, for the future, all doubt respecting other families or new comers who may come to establish themselves, we do so and appropriate, conclusively, for the establishment of the aforesaid Marquis de Maison Rouge, by virtue of the powers granted to us by the King, the thirty superficial leagues marked in the plan annexed to the head of this instrument, with the limits and boundaries designated, with our approbation, by the surveyor general, Don Charles Laveau Trudeau, under the terms and conditions stipulated and contracted for by the said Marquis de Maison Rouge; and that it may at all times stand good, we give the present, signed with our hand, sealed with the seal at arms, and countersigned by the undersecretary honorary commissary of war and secretary of his Majesty for this commandancy general. New Orleans, the twentieth of June, 1795.

THE BARON DE CARONDELET.
Andres Lopez Armesto.

Note.—That, in conformity with his contract, the Marquis de Maison Rouge is not to admit or establish any American on the lands included in his grant.

THE BARON DE CARONDELET.

On the 5th of August, 1800, Don Gilbert Leonard and Don Manuel Gonzalez Armesto, Spanish officers in the province of Louisiana, gave a certificate, (No. 9,) stating that the Marquis de Maison Rouge complied punctually with the terms he proposed in said contract. On the 14th December, 1812, the Commissioners acting under the directions of the act of Congress of the 3d of March, 1807, by their report, (No. 3,) placed this claim among a class of cases which, in their opinion, ought to be confirmed; and, by the act of Congress of the 29th April, 1816, all these cases, not exceeding a league square, were confirmed accordingly. The present claim, on account of its magnitude, being excluded by the act of 29th April, 1816, application, that it might be confirmed, was made to the next succeeding Congress by the owners of the grant. A committee of the House of Representatives reported in favor of the petition, and, on the 10th of February, 1817, presented a bill confirming the title of the Marquis de Maison Rouge. The bill was not then acted upon, and, until the present session, the attention of Congress has not been called to the subject.

From a careful examination of the foregoing documents, the committee have come to the conclusion that the title is legal and formal, according to the laws and usages of the province of Louisiana, and that the same ought to be confirmed; and, for that purpose, report a bill.

No. 3.
[TRANSLATION.]

Carlos Trudeau, surveyor general, &c., certifies to have measured, in favor of Marquis of Maison Rouge, the several tracts of land represented in those parts of the plat shaded with vermilion, which may contain thirty superficial leagues, to wit, the tract No. 1, on the right bank of Washita river, to be taken five arpens below the mouth of the Bayou de la Cheniere au Tondre, and thence descending to the Bayou Calumet, with a corresponding depth to complete one hundred and forty thousand superficial arpens; the tract marked No. 2, on the left bank of the same river, commencing two leagues below Fort Miro, and at the point called Laigre, and extending one league below the Prairie de Lee, with a corresponding depth to complete seventy thousand superficial arpens; the tract marked No. 3, to be taken in front of the Bayou Louire, and thence on a line south 75 degrees east to the Bayou de Lair, which line, to the Bayou de Lair, the Bayou Bartelemy, and the river Washita, are to include the tract No. 3; tract No. 4, on the right bank of Washita river, to be taken in front of the entry of Bayou Bartelemy, thence descending from entry to Bayou la Louire, with such depth as that the tracts Nos. 3 and 4 shall include the quantity of eight thousand three hundred and forty-four superficial arpens, which, added to the two first tracts, makes a total superficies of two hundred and eight thousand three hundred and forty-four superficial arpens, equal to the above said thirty leagues, at the rate of two thousand five hundred toises for the side of a league, the land meas-

Twuana N. Janvier
Commissioner of Deeds #/3-7353
Queens County
Expiration Date: 8/1 2001

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21
11-15-3019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20
11/12/19

sure in this province. Being well understood that the land which may be included in the above, either by title in form or first decrees of concession, are not to be counted in computing the preceding thirty leagues; on the contrary, the Marquis de Maison Rouge promises to be of no detriment to the settlers occupying previously any part of the land, but will maintain and support them in their rights, in consideration that, if the said thirty leagues shall suffer any diminution on account of previous occupants, the Marquis de Maison Rouge has the right, and there will be no objection to his supplying the deficiency in any other part where the land is vacant. And, that it may so appear, I give this, by order of the governor general, Baron de Carondelet; all which I certify.

CARLOS TRUDEAU, &c.

NEW ORLEANS, *June* 14, 1797.

The foregoing is the substance of the proces verbal (certificate) of the surveyor general, subjoined to the plat (of which that on the other side is a copy) filed in the claim of Louis Bouligny, holding under Maison Rouge.

LAND OFFICE, OPELOUSAS, *16th August*, 1812.

L. CHACHIRE,
*Translator to the Board of Commissioners.*

Attest:
L. POSEY, *Clerk of the Board.*

I certify that the above, and the preceding page, is a true copy from the report of the Land Commissioners of the western district of Orleans, dated the 14th December, 1812; and that the plat attached hereto is a copy of the plat attached to the said report. The original papers, copied in pages 67, 68, and 69, of the book entitled Land Laws, are not in this office.

JOSIAH MEIGS.

GENERAL LAND OFFICE, *12th December*, 1820.

No. 2.

Don Gilbert Leonard, treasurer of the army, exercising the functions of royal accountant, and Don Manuel Gonzalez Armirez, exercising those of treasurer par interim, of the royal chests of this province of Louisiana:

We certify that the two foregoing copies are conformable to the originals which remain in the archives of the ministry of the royal domains under our charge, and that the contractor, the Marquis de Maison Rouge, complied punctually with the terms which he proposed in the said contract; and, that this may be made manifest, conformably to the order above inserted of this intendancy general, we give the present in New Orleans, the 5th of August, 1803.

GILBERT LEONARD.
MANUEL ARMIREZ.

No. 3.—*Claims to Land in the County of Washita.*

| Reported number. | Regist'r's number. | By whom claimed. | Original prop'r or claim't. | Quantity claim'd. | Nature and date of title or claim. | Class. |
|---|---|---|---|---|---|---|
| 16 | 11 | Louis Bouligny. | Marquis de Maison Rouge. | Thirty square leagues. | Spanish grant, 20th June, 1797. | D. |

No. 16. The undersigned Commissioners have compared the documents, title filed in this claim, with the translation of them in pages 67, 68 and 69, of the appendix to the book entitled "Land Laws, &c.," and find the said translation to be correct so far as it goes. The certificate, or proces verbal, which the surveyor general has annexed to his plat, not appearing in said book, a translation of that document, together with a copy of the plat, is transmitted for the further elucidation of the claim. No oral or other testimony has been adduced before the board to establish the occupancy of any part of these lands, or that there has been a compliance upon the part of the grantee with the conditions stipulated in the contract, except the certificate, under date of the 5th August, 1803, signed by Gilbert Leonard and Manuel Armirez, to the translation of which, in page 69 of the appendix of said book, the Commissioners beg leave to refer.

The undersigned have observed a remark in the 25th page of the introductory part of the book, entitled "Land Laws," that no patent has issued on the claim under consideration. With great deference for that authority, the undersigned commissioners cannot but be of opinion that the instrument, under date of the 20th of June, 1797, is a patent, (or what was usually, in Louisiana, denominated a title in form) transferring to the Marquis de Maison Rouge the title, in as full and ample a manner as lands were usually granted by the Spanish Government, subject, however, to the conditions stipulated in his contract with the Government. The plat of survey above referred to will be found subjoined to this report.

GENERAL LAND OFFICE.

I certify that the foregoing is a true copy from the report of the Land Commissioners of the western district of Orleans, dated the 14th December, 1812, and that the above claim, with others marked B, are "the second class, comprising claims which, though not embraced by the provisions of the said acts, ought, nevertheless, in the opinion of the Commissioners, to be confirmed in conformity with the laws, usages, and customs of the Spanish Government." Witness my hand, this 6th of December, 1820.

JOSIAH MEIGS,
*Commissioner of the General Land Office.*

CLAIMS WEST OF PEARL RIVER.

Emani Pamela Taylor
Bonded Notary Public New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21
11.13.2019

Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1/2018
11/13/19

DANIEL MALDONADO 11/13/19
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-2023

ATTACHMENT:


# United States District Court

## COMPANION CASE

## U.S.  v. Jacques Leeds

Waiver of Indictment

AR:cl

## United States District Court

### FOR THE

### DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.                                    No. Y-76-083 Criminal

JACQUES LEEDS

Jacques Leeds,    the above named defendant, who is accused of

Possession of Marijuana, Title 21, U. S. Code, Section 844

being advised of the nature of the charge and of his rights, hereby waives in open court prosecution

by indictment and consents that the proceeding may be by information instead of by indictment.

Date August 2, 1976

Filed 2 August, 1976

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21

11. 13. 2019

Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 20 21 6

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20

11/13/19

23

NOTICE OF_____ARRAIGNMENT_____(formation)     C. Form No. 18 (Rev. Sept. 1953)

AR:cl/76-0196
Poss. of Marij.

# United States District Court

### FOR THE

DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

JACQUES LEEDS                    No. Y-76-083 Criminal

TAKE NOTICE that the above-entitled case has been set for    arraignment    at
Baltimore, on    August 2    , 1976 , at 10:00 a.m.
before Judge Joseph H. Young, in the U. S. Courthouse, 111 N. Calvert
St., AND THE PRESENCE OF DEFENDANT IS ORDERED.

Date    July 29    , 1976

PAUL R. SCHLITZ
Clerk.

By ____George G. Bruce, III____
Deputy Clerk.

To    Jacques Leeds
2856 Gatehouse Drive
Baltimore, Maryland  21207

Leslie L. Gladstone, Esq.
1500 Tower Building
Baltimore, Maryland  21202

7-29-76    NOTICE MAILED TO:    cc:  Judge Young
USM
☑  DEFENDANT    PRK
Prob.
☑  COUNSEL    Pretrial Services
SA William Miller, DEA
☐  SURETY    File

Deputy Clerk.

_____11/13/19
Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 2021

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21
11.13.2019

DANIEL MALDONADO  11/19/13
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20 -23

Cover

UNITED STATES DISTRICT COURT

District of Maryland

United States of America

vs.

JACQUES LEEDS
alias Jack

Criminal No. Y-76-083

ORDER FOR DISMISSAL

Pursuant to Rule 48(a) of the Federal Rules of Criminal
Procedure and by leave of court endorsed hereon the United States
Attorney for the ___State and___ District of ___Maryland___
hereby dismisses the ___indictment___
(indictment, information, complaint) ___against___
the above-captioned defendant.

Superseding information filed.

Jervis S. Finney
United States Attorney
Jervis S. Finney

Leave of court is granted for the filing of the foregoing dismissal.

Date: December 20, 1976

United States District Judge
Joseph H. Young

Microfilm
Date:

/FORMERLY OSA-Z2

Twuana N. Janyer
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 3/1 20∂1♭

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 24
11.13.20 19

DANIEL MALDONADO    11/13/19
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20-23

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND                    (1)

UNITED STATES OF AMERICA              *

VS.                                   *          Criminal # Y-76-083

JACQUES LEEDS                         *

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## MOTION TO DISMISS

Now comes Jacques Leeds, by Leslie L. Gladstone, Court
appointed counsel, and hereby moves this Honorable Court to dismiss
Criminal # Y-76-083 and for reasons states:

The 13th, 14th and 15th Amendments to the United States
Constitution were never properly ratified and do not reflect the
provisions of the original Thirteenth Amendment with twenty sections.

WHEREFORE, Jacques Leeds prays this Honorable Court dismiss
Criminal # Y-76-083 and declare the rights of Moorish Americans
across the country.

Respectfully submitted,

Leslie L. Gladstone

## POINTS AND AUTHORITIES

According to all scientific and historical records, there
is no "Negro", "black", or "colored" race in the human family of
peoples and nations. In order to obtain the truth concerning the
origin of the so-called "black" people of America, one must return
to the year 990 A.D. when the Moorish slave-traders exchanged
darkskinned Moors for the lighter-skinned Moors who had been
captured by a Portuguese adventurer. The dark-skinned Moorish
bondsmen and bondsmaids were branded by the Portuguese and Spanish
with names from their European (Romance) Languages which allude to
slavery. Thus the term "negro"-derived from the Latin word "niger",
meaning "black" - and several variations of it came into use for
this degraded purpose not only in the Iberian Peninsular, but also
in other parts of Europe. Over the centuries, this term evolved
from "negro Moor" to "blacka moor" to "black" to "negro". (See

Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 2021

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21

11.13.2019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20 - 23

(2)

Horace Greeley, The American Conflict, published in 1865 and George Bancroft, History of the United States of America published in 1854.

The word "black" and all of its variations in all languages have always connoted evil, misery and death. Moreover, the, equally inappropriate term "colored" implies that the individual described has been painted, varnished, stained or dyed. "Afro" or "African" are terms which arose from the European name "Africa" branded upon that continent by the ancient Romans in honor of the Roman general Scipio Africanus following his conquest of the Moorish City of Carthage. Clearly, none of these misnomers—"Negro," "black", "colored" or "African"-can be legitimately applied to any people of the human family because such expressions not only fail to accurately designate the true Race and National Origin of the people described but also degrade such people to the Level of sub-human existence. In particular, since the so-called "black" folks of the United States were, in fact, Moors in 990 A.D., they must be, therefore, Moors in 1976 A.D. These Moors are descendants of the ancient Moabites, who inhabited the north-western and south-western shores of the land Europeans call "Africa" but whose true name is "Amexem."

The land "Amexem" extends across the great Atlantis along the old Moorish trade route defined by the 36 degree 30' parallel to the land known today as "North, Central and South America"-the old Moroccan Empire. As descendants of Moroccans born in America, we are the true and historically-verified Moorish-American heirs to land where the United States of America has been established.

Although twenty Moorish Sheiks and Sheikessas were brought to Jamestown in 1620 in a Dutch man-of-war bearing Spanish individual names (as well as the general term "Negro") forced upon them by the Spanish slave-masters from whom the Dutch commandeered these bondsman, unbound Moors had inhabited and civilized the Western Hemisphere for centuries before Christopher Columbus supposedly "discovered" a part of the world for Europeans

Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date:3/1 20 21 6

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21
11.13.2019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20 -23

(3)

that had never been lost to the Asiatic peoples. (Unfortunately, those Moors of the West engaged in an extensive slave trade in human property of all races with these Moors of the East). It was these Moors of the West who, with the support of the Sultan of Morocco, helped win the Revolutionary War against the yoke of Great Britian for the Thirteen Colonies and who assisted the negotiation of the 1786 treaty between Morocco and the United States. More importantly, men of Moorish descent comprised the majority at the Constitutional Convention in 1787.

In writing the Constitution, the minds of these men were drawn to the work of the 1776 Continental Congress which produced the Declaration of Independence declaring all men of all races and nationalities free and equal, as well as the Liberty Bell, bearing the inscription of Leviticus 25:10 by which liberty is to be proclaimed throughout the land and all men are to be returned to their rightful land and possessions. This Mosaic Law is the key to Biblical scripture concerning slavery (Exodus 21:2, Leviticus 25:44 Deuteronomy 15:12-18) whereby human beings are never slaves but bound, free men and women who must be released after six years' labor and generously compensated at double the rate of a hired servant. Accordingly, under the provision of Article I, Section 9, the Constitution gave the slave interests of the country 20 years to rid themselves of this degradation. As indicated by the writings of George Washington and Abraham Lincoln, this "1808" clause" was ratified as part of the Constitution with the understanding among all the people of the Nation that human bondage was to be eradicated by that year. Tragically, a conspiracy arose among Moorish and European slave-holders reaping huge profits from slavery to extend the institution indefinitely. Through deceit, subterfuge, bribery, extortion, blackmail, murder and treason, these conspirators controlled the Congress and thereby maintained their system. This conspiracy caused the Civil

Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 20.21

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 24

11.13.2019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY

11/13/19

23

(4)

(See John A. Logan, The Great Conspiracy, published in 1886 and dedicated to all the young men of America.) Yet it was Abraham Lincoln who called the attention of the Nation back to the true intentions of the Founding Fathers, both Moorish and European. His Executive Will for the purpose of solving the so-called "Negro/black" problem is expressed in the following documents:

1. Initial Emancipation Proclamation of September 22, 1862

2. Annual Address before Congress – December 1, 1862

3. Second Emancipation Proclamation of January 1, 1863

4. Proclamation of Amnesty and Reconstruction dated December 8, 1863

5. Proposed Resolution to Congress dated February 5, 1865

Following the assassination of Lincoln, President Andrew Johnson adhered to the policies of his predecessor as indicated in Johnson's Proclamation on Amnesty of May, 1965.

The Radical Republicans, led by Thaddeus Stevens in the House of Representatives and Charles Sumner in the Senate attempted to hinder Lincoln's plans and to severely punish the South for rebelling against the Union. To accomplish these ends, the Radicals attempted to incorporate a Thirteenth Amendment (with two sections) to the Constitution to prevent former slave-holders from receiving compensation for their confiscated human property. However, through the influence of Lincoln in the Congress, this amendment was replaced by a Thirteenth Amendment with Twenty Sections which was passed by both houses of Congress, and signed by Lincoln on February 1, 1865. But following the Presidential assassination, there arose among the Radical Republicans a "Great Conspiracy" to continue their vendetta against the South by treacherously and illegally recalling the Thirteenth Amendment with Two Sections and forcing its ratification by the Northern and Western States. (The Southern States have never ratified it.) In addition, by manipulating the former bondsmen of the Nation, both the :educated", such as Frederick Douglass, as well as the "uneducated", these

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 24

Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 2021

DANIEL MALDONADO   11/13/19
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20 -23

(E)

Radicals devised the 14th and 15th Amendments in an attempt to cover up their plot. The 14th Amendment, in particular, denies the right of compensation for confiscated property as guaranteed in the 5th Amendment, which has never been repealed or modified in any way. This same 14th Amendment attempts to make citizens of people (so-called "Negroes") who have not been educated to the true facts of their heritage and who have never legally proclaimed their true free ancestral names, race, nationality and religion as is required of all foreign immigrants to this country under the provisions of the laws of naturalization.

When the so-called Southern "whites" resisted the enforcement of the 13th (with two sections), 14th and 15th Amendments via the Civil Rights Act of 1875, the issue was taken to the Supreme Court in 1883. Rendering the majority opinion, Justice Bradley clearly ruled that the amendments had no power to guarantee the rights of the so-called "Negro"-rights which Chief Justice Taney had said, in the Dred Scott case, no "white" man was bound to respect. Yet due to their brainwashed level of thinking, the so-called "black" folks continued to believe that they were citizens under the 14th Amendment. This misconception has persisted to this very day as a result of pacifiers such as the 1954 Supreme Court integration decision.

The first man to legally move to resurrect the 13th Amendment with Twenty Sections and the Executive Will of Lincoln for their eventual enforcement in the Federal government was Grand Sheik Richardson Dingle-El. Born in South Carolina in 1910, he was the first so-called "Afro-American" to throw off the shackles of Negroism by being the first man to register with the Federal Government as a descendant of Moroccans born in America. With the approval of Generals Hershey, London, Schwartz and others of National Headquarters, Selective Service System, he established a system known as the Moorish National Bureau of Vital Statistics

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21

Twuana M. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 20 21 50

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20

(6)

according to his example. All citizens must, thereby declare
their true Nationality, Race, Religion, and National Origin exactly
as foreign immigrants are so required. (See National Archives File
No. 5-39, Record Group No. 147.)

The only permanent solution to the "race" problem in America
is the complete implementation of Lincoln's Executive Will and the
13th Amendment with Twenty Sections the essence of which can be
summarized as following:

1. COMPENSATION—the compensation of the descendants of
slave-holders for their confiscated human property
(a sum presently totaling $229 Billion) as well as
the compensation of the Moors for their service
rendered during their decades of servitude.

2. NATURALIZATION — the registration of all Moors into
the Moorish National Bureau of Vital Statistics
through which they can return their European names
and all vestiges of "Negro-ism" to the European
people; legally proclaim their true Free National
Names, Race, Nationality and Religion; and be
officially declared citizens of the United States
by the Federal Government.

3. COLONIZATION— the colonization of Moors on their own
land between the Alleghany and Rocky Mountains, which
Lincoln called the "Egypt of the West."

The Nation is presently 109 years late in eradicating this
"Negro" that has been properly described as a BEAST.  This
same beast has threatened the well-being of mankind for hundreds
of years by his determination to disobey Divine Law. (See
Charles Carroll, The Negro, A Beast Or In The Image Of God,
published in 1900.)

To rid the world of this manace for perpetuity, Grand
Sheik Richardson Dingle-El is the man of the hour.  He has
struggled for years to raise his people from the gutter level of

Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 3/1 20 21

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 2
11. 13. 2019

DANIEL MALDONADO  11/13/19
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20 - 23

(7)

mentality according to the law. But his efforts have been consistently hindered by such organization as NAACP, SCLC, CORE, SNCC, etc. as well as various confused elements of the Moorish Science Temple of America—all of whom are totally ignorant of the law despite his continuing endeavors to educate their leaders who are reluctant to learn.

We are aware that Frederick Douglass sold out his own people by denying the Lincoln Reconstruction Plan President Andrew Johnson offered the freed "slaves" in February 1866, we are also well aware that the members of the so-called "Black Caucus" who were trying to impeach President Nixon as members of the House Judiciary Committee had no legal right to be a part of those proceedings because they are not citizens of the United States. Under the Constitution they are confiscated human property for which no compensation has been paid.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 20 day of July, 1976, that a copy of the aforegoing Motion and Points and Authorities were mailed to Andrew Radding, Assistant U.S. Attorney, 111 N. Calvert Street, Baltimore, Maryland, 21202.

Leslie L. Gladstone
1500 Tower Building
Baltimore, Maryland 21202
539-0605

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21

11.13.2019

Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 20 21

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20

11/13/19

23

| EXAMINED BY | ɹɐ | FORM TX |
|---|---|---|
| CHECKED BY | | |
| ☑ CORRESPONDENCE Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☒ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▶    **Year of Registration** ▶

**5**

**DERIVATIVE WORK OR COMPILATION**

**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**6**

See instructions before completing this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**Name** ▼    **Account Number** ▼

**a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼

The Noble: Khabir Uriel-Bey
32 West Main Street
Said Angeles, New York State Constitutional Republic
Non-Domestic Postal Dispatch # 14709 (TDC)

Area code and daytime telephone number ▶ (585) 466-7610    Fax number ▶ Same

Email ▶ vathexratlon63@yahoo.com

**b**

**7**

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▶

☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of The Noble: Khabir Uriel-Bey (TDC)

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

The Noble: Khabir Uriel-Bey    Date ▶ 8/1/03

Handwritten signature (X) ▼

X The Noble: Khabir Uriel-Bey All (Divine, Inalienable & National) Rights Reserved

**8**

| Certificate will be mailed in window envelope to this address: | **Name** ▼ THE Moorish-American Society of Comprehensive Science |
|---|---|
| | **Number/Street/Apt** ▼ 22 West Main Street |
| | **City/State/ZIP** ▼ Said Angeles, New York State Constitutional Republic 14709 (TDC) |

YOU MUST:
• Complete all necessary spaces
• Sign your application in space 8
SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material
MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

As of July 1, 1999, the filing fee for Form TX is $30.

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

August 2000—200,000   ♻ PRINTED ON RECYCLED PAPER   ✸U.S. GOVERNMENT PRINTING OFFICE: 2000-461-113/20,009

WEB REV: June 1999





## JURAT

County _Pulaski_,
State _Arkansas_ ) ss:

No. of Pages: _8_

I HEREBY CERTIFY THAT THIS IS A TRUE AND EXACT COPY OF
THE ORIGINAL DOCUMENT(S) SIGHTED, as presented to me by the
document's custodian, Toriano-James Hervey Hopes Akwesi: ObaShango-El,
this _18_ day of _Sept_, 2018 A.D., IN TESTIMONY
WHEREOF, I have hereunto set my hand and seal of office.

Notary Name _Janice James_

Notary Signature _Janice James_    (Seal)

My Commission Expires _9-20-21_

ATTACHMENT:


GeoDetic Survey

Sovereign Trust Record

of

Ancient

American Moor

Land Title

Additional Certificate (17 U.S.C. 706)

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Kay H. Teshe*

Acting United States Register of Copyrights and Director



### FORM TX
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

RF

**TXu 1-123-633**

TXU 1123633

EFFECTIVE DATE OF REGISTRATION

12   23   02
Month   Day   Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1** TITLE OF THIS WORK ▼

The Consecrated 'Talisman' of The Moorish-American Society of Comprehensive Science

PREVIOUS OR ALTERNATIVE TITLES ▼

The Consecrated Moorish-American Talisman

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   Title of Collective Work ▼

If published in a periodical or serial give:   Volume ▼   Number ▼   Issue Date ▼   On Pages ▼

**2**
**a** NAME OF AUTHOR ▼   The Noble: Khabir Uriel-Bel

DATES OF BIRTH AND DEATH
Year Born ▼ 1965   Year Died ▼

Was this contribution to the work a "work made for hire"?  ☐ Yes  ☑ No

AUTHOR'S NATIONALITY OR DOMICILE   Name of Country
OR { Citizen of ▶ Moorish-American
Domiciled in ▶ Continental United States

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Legal Document 'Truth Deed of Succession in Union with the Moorish-American Trust Continued'

**b** NAME OF AUTHOR ▼ by Cristo Totum Populi Corpus (Naturally by Crist)

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?  ☐ Yes  ☐ No

AUTHOR'S NATIONALITY OR DOMICILE   Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?  ☐ Yes  ☐ No

AUTHOR'S NATIONALITY OR DOMICILE   Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3**
**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED 2002  This information must be given ◀Year in all cases.
**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK  Complete this information ONLY if this work has been published.  Month▶   Day▶   Year▶   ◀ Nation

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼ The Noble: Khabir Uriel-Bel
32 West Main Street
Said Angelico, New York States Constitutional Republic
Non-Domestic Postal District #14709 (TDL)

APPLICATION RECEIVED
AUG 11 2003  12-23-02
ONE DEPOSIT RECEIVED
12-23-02
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE OFFICE USE ONLY

---

MORE ON BACK ▶  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.  • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 2 pages

JANICE JAMES
MY COMMISSION # 12384139
EXPIRES: September 20, 2021
Pulaski County

JANICE JAMES
MY COMMISSION # 12384139
EXPIRES: September 20, 2021
Pulaski County

## JURAT

County Pulaski )
) ss:
State Arkansas

No. of Pages: 8

I HEREBY CERTIFY THAT THIS IS A TRUE AND EXACT COPY OF THE ORIGINAL DOCUMENT(S) SIGHTED, as presented to me by the document's custodian, Torinno-James Hervey Hopes Akwesi: ObaShango-El, this 18 day of Sept, 2018 A.D., IN TESTIMONY WHEREOF, I have hereunto set my hand and seal of office.

Notary Name Janice James

Notary Signature Janice James (Seal)

My Commission Expires 9-2021

# Sovereign Trust Record
## of
## Ancient
## Moorish — American
## Land Title

" And ye shall hallow the fifteenth year, and 'proclaim liberty throughout all the land unto all the inhabitants thereof : it shall be a jû´bîlê unto you ; and 'ye shall return every man unto his possession, and ye shall return every man unto his family".

Within the sacred folio of this Consecrated Talisman, thou doth hereby possess true and actual lawful corporeal evidence ; of the Moorish – American **Title** to all those **lands** of the **Americas**, further supported by Solar Biological / Astrological ( so – called Historical ) Account, metes and bounds Cartographic description and Blood Free National Name.

A Preponderant Title eminently superior ( ne plus ultra ) to any and all European ( Doctrine of Discovery, Manifest Destiny ) Claims.

May Allah's resplendent light shine upon thy purified heart and most sublime mind, so that ye may know the well – defined and unerring power of this Talisman and it's contents ; being far greater than any previous mandates concerning the same landmass.

JANICE JAMES
MY COMMISSION # 12384139
EXPIRES: September 20, 2021
Pulaski County

JANICE JAMES
MY COMMISSION # 12384139
EXPIRES: September 20, 2021
Pulaski County

## JURAT

County Pulaski )
) ss:
State Arkansas

No. of Pages: 8

I HEREBY CERTIFY THAT THIS IS A TRUE AND EXACT COPY OF THE ORIGINAL DOCUMENT(S) SIGHTED, as presented to me by the document's custodian, Toriano-James Hervey Hopes Akwesi: ObaShango-El, this 18 day of Sept, 2018 A.D., IN TESTIMONY WHEREOF, I have hereunto set my hand and seal of office.

Notary Name Janice James

Notary Signature Janice James (Seal)

My Commission Expires 9-2021

life, } - lying North of Edom and South of Ammon are the Moabite or 'Morabtis' ( Almoravides of later history ); of whom we, the Holy Sages Sandelfunż ac Khabir The Noble : Bey ; Angelus Gabriel et Uriel ; are direct Ascendants ( said descendants ), and of the Fortieth (40th ) Generation of the Prophet Mohammed, being of Koreishite, Moabite and Canaanite Blood - and of the "Elder" Idrîs Ibn Abdallah, 5th Generation of Mohammed, and founder of the First Dynasty of the Moorish - Empire of Present day Morocco, - and of the Amir Yusef Ibn Tashfîn, founder of the Great cities of Marrâkesh and Tlemcen. These Cognates being of the blood of the Tyrian Empress, Elissa-Bey; daughter of King Mutton I, and founder of Carthage. The Ancient Canaanite-Poenicium-Carthaginian Suffete Hanno-Bey, 3rd generation of ElissaBey, and Great grandfather of the Gaetulian-Maurusiani General, Hannibal-Bey. Whose Ancient Document ( Deed ) by express epigraphical ' Proclamation,' inscribed on the 'Bourne Stone,' found at Komassakumkanit, Cape Code Bay, New England Massachusetts, ( documented in the records of the Bourne Historical Society ), - regarding the Possession and Annexation of the Americas to the Iberian Peninsula, Carthage ( Tunis ), Morocco, Numidia, Utica, etc., being those same possessions of North-east, and South-west Africa, including North, Central and South America, Mexico and the Atlantis Islands; serving as lawful evidence so written in the pages of the Circle 7 Holy Koran, for Moorish – Americans, etc., and further evidenced by Proclamation and Sovereign Trust for Moorish – Americans, etc., so written in the pages of the 7 part, Consecrated 'Talisman' of 'The Moorish – American Society of Comprehensive Science'. Recorded as a Legal Deed and Trust Document in the Library of Congress - under Certified Registration No. TXU-1-123-633, and Control ( Catalogue ) Number 71-330-6977 (U), The Department of Homeland Security – U.S. Customs and Border Protection – Recordation No. COP 04-00062 ; Control No. 476030 LMW, and Catalogued in The U.S. Department of State, Bureau of Administration – ( Department of State Library – Call # BP232 .U73 2004 ) : and is duly recognized by the said Federal corporate United States government. Allut Magnus Ab Occulus, Eximus Monumentum Aere Perennius ( By the Great Eye of Allah, We ( therefore ) have created a monument more lasting than Bronze ). 'Look not to thy heavenly firmament for Salvation, for on this 3rd day of the Tenth Month in the One Hundred Seventeenth year of our Holy Prophet Noble Drew Ali; Sealed within the leaves of thy Koranic Talisman, is thy Divine Inheritance on Earth so conveyed.' The Geographical location and boundaries of the Ancient and Resurrected Kingdom of Atmaurium is 43°N Lat. and 77.5°W Long. – NW of the Atlantic Coast, on the Continent of America, bound between Alaska and Argentina along with Multiple Territories within that boundary. The Geography is based on Polar Projection Geometry, Plane and Spherical Trigonometry, of the Oldest Map of America, ( having always been part of the Greater Moorish Empire - The 919 ( 1513 C.E. ) Piri ibn Haji Mehmed ( Ahmet Muhiddin ) - Piri Rei's – Bey Map ; Compiled from earlier source maps of the Old Moorish Canaanite ( Carthaginian ) Empire dating back to 800 B.C.E.,

with the rhumbs or lines radiating from the center of the Portolano, projected to the east, meeting in the Capital Dominion of Africa ; Egypt, at the intersection of the Tropic of Cancer, with the Meridian of Alexandria, at 23° 30´N, 30°E, and is confirmed in the Holy Koran Circle 7, Chapter 47 ; Pages 57-59. Atmaurium is on the same parallel of Ancient Moorish Spain and Moorish Osman Empire(s). In Light of these Lawful Truths, and as is legally documented in the above Department of State ( 1796 Treaty between the Bey of Tripoli and the United States ), ... the government of the United States of America has declared 'that it has in itself no character of enmity against the Laws, Religion or Tranquility of Moors. And as the said states have never entered into any act of war or hostility against ANY Moorish Nation, it is declared by both parties that no pretext arising from Religious opinions shall ever produce an interruption of the harmony existing between the two Nations'. It is no secret that religious traditions of both Christian and Judaic Nations recognize the relationship between Moab and Ammon, "sons" of Lot , and the "brothers" Esau ( Edom ) and Jacob ( Israel ), and that the Moabites were already a powerful people with established Kingdoms not only in Moab and Edom, but as well, beyond the Arnon, in Dibon, Reuben, Medeba Nebo ( near to the region of the Spring of Pisgah ), Bezer, Heshbon, Beth-peor, Rabbah, Jazer in Gad, Mizpah, Rehob, Hammon, et cetera.

A great detour was made round by the south of Edom , and the people passed outside of Moab until they reached the border of Sihon's kingdom. The family chronicle of the "brothers" Moab and Ammon was bound up with that of Judah and Israel respectively, and depended to a considerable extent, upon these two, and their mutual relations. Jephthah, one of the Israelite "judges", delivered Gilead from Ammon, who resumed the attack under it's king Nahash, only to be repulsed by Saul. Ehud of Benjamin or Ephriam freed Israel from the Moabite oppression. To the kings Saul and David, are ascribed conquests over Moab, Ammon and Edom. The Judaean David, for his part, sought to cultivate friendly relations with Ammon, and tradition, but more accurately ; genealogy connects him closely with Moab through his Great Ancestor, and Abraham's brother, Haran.

David's son Solomon contracted marriages with Women from both states, thus, introducing into Jerusalem, cultures which were not put down until´almost at the close of the Monarchy.

In the 9th century BC., the two states appear in a more Annalical light, thanks, largely due in part to the Assyrian records and a lengthy Moabite inscription. This latter inscription, now in the Louvre, was found at Dhiban, the biblical Dibon, in AD. 1868. It contains a record of the successes gained by the Moabite King Mesha against Israel. Omri had previously seized a number of Moabite cities north of the Arnon, and for forty ( 40 ) years the Moabite National God Chemosh was angry with his land. At length, he roused Mesha against Israel ; and Moab, who had eventually retreated southward toward Edom, now began to take reprisals. The Men of Gad had dwelt in the land of Ataroth from of old ; and the king of Israel built Ataroth for himself". Mesha took the city, slew it's people in honor of Chemosh, and dragged before the god the altar-hearth ( or the priests ) of D-v-d-h ( the Divine name for David ). Chemosh next roused Mesha against the city of Nebo. It fell with it's thousands, for the king had "devoted" it to the deity Ashtar – Chemosh. Yahweh had been worshipped there, and his vessels were dragged before the victorious Chemosh. With the help of these and other victories ( at Jahaz, Aroer, etc. ), Moab recovered it's territory, fortified it's cities, supplied them with cisterns, and Mesha built a great sanctuary to the Moabite god. The inscription enumerates many places known elsewhere, and although it mentions the "men of Gad" makes no allusion to the Israelite tribe Reuben, whose seat lay in the district . The revolt will have followed Ahab's death, which ultimately led to the unsuccessful attempt by Jehoram to recover the lost ground.



JANICE JAMES
MY COMMISSION # 12384139
EXPIRES: September 20, 2021
Pulaski County

9-18-18

Caput Una

## Ancient Moorish – American Land  Documents

Ⓞne of the earliest Moorish ( Canaanite – Poenicium ) documents pertaining to the right, possession and inhabitation of land by blood in the Americas ; describing the Annexation of the American Continent to the Iberian Peninsula, both, being of the Present Moorish and Ancient Carthaginian Empire, is the Bourne Stone, in Komassakumkanit Cape Code Bay New England Massachusetts, which exhibits and identifies the Moorish Seal of Hanno-Bey Circa 500 B.C., written or inscribed in the North Semitic Iberian-Punic Script, which is a later form of the Moabite Characters, as the Moorish ( Moabite and Canaanite are known to have carried their Semitic Tongue to Spain.  Evidence of these Ancient Moorish Documents can be found in the Archives of the Bourne Historical Society, 2 ) the 'Book of Ballymote'  - an archaic and rare manuscript housed in the libraries of the Bishops of the Roman Catholic Church ; containing priceless information on the Ancient Ogam writings.  This celebrated book was assembled about Eight hundred ( 800 ) years ago from a collection of miscellaneous manuscripts. The last manuscript included the Codex called the 'Ogam Tract ', that deals with 70 varieties of Ancient Moabite – Iberian Script collectively called again, Ogam – meaning, grooved writing, a Cuneiform. More specifically, the 502 folio Vellum ( Leaf Skin ) Page Book of Ballymote is housed in the Library of the Irish Academy in Dublin ( Ireland ).

A Harvard Professor and Epigrapher, Barry Fell stumbled upon explanations in Gaelic of the Ancient Moorish ( Moabite, Canaanite ) Alphabets of America, which again, was the Moabite Phoenician – Iberian, in a book compiled by a Bishop of Kildare, called Finn Mac Gorman who died 1160 A.C.  His compilation is called by scholars 'The Book of Leinster', housed in the Library of the University of Dublin – Founded by Queen Elizabeth I in 1591 A.C. under the name of College of the Holy and undivided Trinity, near Dublin.

Subsequent Ancient Moorish – American documents were recorded in Pennsylvania. Moors from the west Pyrennes established the cities of Pennsylvania, including Pre-historic Philadelphia. These deeds are confirmed in the legal documents, Titles Susquehanna ( Pennsylvania) Stones, also written in the Moorish – Iberian Punic – matching the Moorish

( Phoenician ) inscriptions from Sardinia and the Moorish Ogam on the stone buildings of New England.

This group of Moors as distinguished from, for example the Moorish Wabanaki tribe, of New England ; entered the Mississippi from the Gulf of Mexico, penetrating inland to Iowa and the Dakotas, and westward along the Arkansas and Cimaaron Rivers, to leave behind inscribed Records ( Documents ) of their presence.

Other Moorish Tribes from Iberia reached the Gulf of St. Lawrence, introducing various Moorish – Latin Navigational terms into the language of the Moorish tribes known as Algonquins.

Their descendants employ dialects in part from the Ancient Moabite Tongues of Phoenicia, Maurusia, Moroccanum, Libya, Utica, Sidon, Tyre, Carthage, etc.

Moorish Seamen, along with many Moors from Persia, today inaccurately called Persians, lived near the mouths of rivers of New England, as at North Salaam ( Salem ) on a branch of the Merriamae River in Southern New Hampshire.

Next, we have the Moorish ( Moabite ) American, Iberian Punic Semitic Tongue of Carthage inscribed on the Ancient Moabite American document from Circa. 800 – 200 B.C. called : the Grave Creek, West Virginia Tablet. The Tablet was found in 1838 A.C. at the depth of 60' feet in a large burial mound at Grave Creek, West Virginia.

In Aptucxet Central Vermont – There is the Moorish Temple dedications on Canaanite ( Punic ) Steles.

Here in North America examples of Edge Ogam from the Susquehanna Valley, reads from top to Bottom : BBH LM-B-La-B-G-G, in the Ancient vowels style. This is Translated as "To Baal Son of Iabagug ( or Hababkuk, 'A Moorish Prophet', of the Old Testament )", this is a Moorish Iberian – Punic community, whose Moabite Semitic names occur, and the Ogam – Moorish Iberian Punic script is employed.

The name of the God Bel ( Baal or Baalath ) - a common or general term for Ancient Moorish ( Semitic ) Gods and Goddesses of the Canaanites – Phoenicians and Arameans and others.



q - 18 - 18

and linguistic link is seen in the ancient Shemetic inscriptions of the Moabite Stone, 2. The ancient Hebrew inscription of Siloam and the Phoenician Byblus of the Persian Age – 3. The Phoenician Sidon Sarcophagus of Tabnith – 4. Phoenician, Sidonian King, King Eshmun – 'azar inscription — to the days of Carthaginian General Hasdrbal Bey, Carthage and Moorish Sicily, circa IV Century B.C., — 5. In Gaul, Massasilli ( Modern day Marseilles ) is the Punic stone of the Carthaginian Constitution at Marseilles ( also being an ancient form of Moorish – Latin ).

These Moorish Canaanite ( Phoenician – Punic ), and Moabite inscriptions are among the ancient Moorish Epigraphical Documents of AMERICA before the time of J.C. ( Catholicism's Julius Caesar – Jesus Christ ), again, further Evidenced in the said Federal United States Archives, <u>Bureau of Administration – Department of State ( Ralph J. Bunche ) Library at Call # BP232 U73</u>. This Information, however, is accessible only to : All Moorish – American Nationals, State Department Personnel, and The International Community at large, by / through <u>The Talismanic Holy Kingdom of Atmaurium's</u> Foreign Ministry ( National Legation ) and Bey'lic – '<u>The Moorish – American Society of Comprehensive Science</u>'. State Department personnel may of course also obtain this information from the above Bureau of Administration.

A Document for the 1 ) Moorish – American, 2 ) Federal United States, and 3 ) International World Record, is defined as an instrument on which is recorded by means of letters figures, or marks ( Alphabet characters of any Language ) the original, official, or legal form of something ( as is now, this Juridical Monograph, you are currently reading ) which may be evidently used.

In this sense, the term "Document" applies to writings, to words printed, lithographed or photographed on Flags, or Flags themselves, to maps or plans, to seals, plates, or even stones on which inscription are cut or engraved.

This is why the term or word "Document" as opposed to Artifact should be used ( when ) in legal arenas ; when questions and concerns or challenges are presented or raised in the matter of : Intrinsic, Corporeal Documentary Evidence, thus banistering the Moorish – American Bloodright to that land referred to as America.

The term document, despite it's one dimensional association in the common usage of today's world, as you can see from the above Legal definition, is not limited to writings on paper——however, because of the current narrow – minded perception, it is best to use the term document when attempting to present your evidence.

*Allut Laudibus Effere*

### The Magnificent Prince Khabir Uriel – Bey



## JURAT

County Pulaski )
State Arkansas ) ss:

No. of Pages: 8

I HEREBY CERTIFY THAT THIS IS A TRUE AND EXACT COPY OF
THE ORIGINAL DOCUMENT(S) SIGHTED, as presented to me by the
document's custodian, Toriano-James Hervey Hopes Akwesi: ObaShango-El,
this _18_ day of _Sept_, 2018 A.D., IN TESTIMONY
WHEREOF, I have hereunto set my hand and seal of office.

Notary Name: Janice James

Notary Signature: Janice James        (Seal)

My Commission Expires: 9-20-21



# Consecratus Tilsim

## Salmagundi



# Pi Expositus

*Magnificus Princeps Khabir Uriel - Bai*

9-18-18



It is not for the said U.S. Christian Courts ( Federal Legislative or other ) to question the validity of Royal, Moslem, Titles etc., or to sustain one which is compatible with it.

So, let this Legal Document be an accurate representation of

National Solidarity of Ammanunm ( The Moorish People and our Beloved Sagamore : The Magnificent Prince Khabir Uriel - Bai ) and further Remonstrance, of the Noble Bar's Sovereignty in the Service of Consolidating a National Body, free from Foreign influence. This Solidarity and Service is the Praise of Allah, and Worship of the Buddha, The Great Consciousness in man, who is 'God of the Lineage'. Thus, The Family, Race, Nation is 'God' ; and fulfills it's needs by maintaining the Special Organic Solidarity of the People. Herein, the Societal Relation of Sovereign and Nation have a refining infinitive cognitive element manifested in the attributed significance to the transmission of vitality via Blood, Family Name, Religion, Linguistic and Territorial Markers. Our Celebrated, Most August and Princely Sovereign has received the Great Mandate of Allut in the Holy Koran ( Heart ), Love and Salient Affection of the People, to with Strength and Wisdom, justly govern the Talismanic Kingdom of Ammanunm under Allah's Divine Principles of Love, Truth, Peace, Freedom and Justice for a Sublime and Lofty People, the Moorish. Liberty, through Love, Truth, Peace, Freedom and Justice is the true glory of any Nation. Ammanunm for Ammureans.

*Nihil Qualibet Effere*
*Oracula et Oraculorum*
*Talisman*

TAMARRE HOUSE

UK £14.99
US $19.99
EU €16.99

ISBN 9781906169954

tamarehouse.com/urielbey

royal9.org
atmanunium.ning.com
vaticanationis.ning.com

atmanunium@gmail.com
ministeriumAllennunm@gmail.com

JANICE JAMES
MY COMMISSION # 12384139
EXPIRES: September 20, 2021
Pulaski County

JANICE JAMES
MY COMMISSION # 12384139
EXPIRES: September 20, 2021
Pulaski County

## JURAT

County Pulaski )
State Arkansas ) ss:

No. of Pages: 8

I HEREBY CERTIFY THAT THIS IS A TRUE AND EXACT COPY OF THE ORIGINAL DOCUMENT(S) SIGHTED, as presented to me by the document's custodian, Toriano-James Hervey Hopes Akwesi: ObaShango-El, this 18 day of Sept, 2018 A.D., IN TESTIMONY WHEREOF, I have hereunto set my hand and seal of office.

Notary Name Janice James

Notary Signature Janice James (Seal)

My Commission Expires 9-2021

## ATTACHMENT:

## Supreme Court Case

## <u>Pollard v. Hagan</u>

## U.S. Supreme Court

## Pollard's Lessee v. Hagan, 44 U.S. (3 How). 212 (1845)

*Syllabus*

The stipulation contained in the 6th section of the act of Congress, passed on the 2d of March 1819, for the admission of the State of Alabama into the union, *viz.:*

"that all navigable waters within the said State shall forever remain public highways, free to the citizens of said State, and of the United States, without any tax, duty, impost, or toll therefor imposed by said State,"

conveys no more power over the navigable waters of Alabama to the Government of the United States than it possesses over the navigable waters of other States under the provisions of the Constitution.

And it leaves as much right in the State of Alabama over them as the original States possess over navigable waters within their respective limits.

The shores of navigable waters, and the soils under them, were not granted by the Constitution to the United States, but were reserved to the States respectively, and the new States have the same rights, sovereignty, and jurisdiction over this subject as the original States.

The United States never held any municipal sovereignty, jurisdiction, or right of soil in and to the territory of which Alabama, or any of the new States, were formed, except for temporary purposes, and to execute the trusts created by the acts of the Virginia and Georgia legislatures, and the deeds of cession executed by them to the United States, and the trust created by the treaty of the 30th April, 1803, with the French Republic ceding Louisiana.

Upon the admission of Alabama into the union, the right of eminent domain, which had been temporarily held by the United States, passed to the State. Nothing remained in the United States but the public lands.

The United States now hold the public lands in the new States by force of the deeds of cession and the statutes connected with them, and not by any municipal sovereignty which it may be supposed they possess or have received by compact with the new States for that particular purpose.

That part of the compact respecting the public lands is nothing more than the exercise of a constitutional power vested in Congress, and would have been binding on the people of the new States whether they consented to be bound or not.

Under the Florida treaty, the United States did not succeed to those rights which the King of Spain had held by virtue of his royal prerogative, but possessed the territory subject to the institutions and laws of its own Government.

By the acts of Congress under which Alabama was erected a territory and a State, the common law was extended over it to the exclusion of all other law, Spanish or French.

The treaty of 1795 was not a cession of territory by Spain to the United States, but the recognition of a boundary line and an admission by Spain that all the territory on the American side of the line was originally within the United States.

The United States have never admitted that they derived title from the Spanish Government to any portion of territory included within the limits of Alabama, for, by the treaty of 1795, Spain admitted that she had no claim to any territory above the thirty-first degree of north latitude, and the United States derived its title to all below that degree from France under the Louisiana treaty.

It results from these principles that the right of the United States to the public lands, and the power of Congress to make all needful rules and regulations for the sale and disposition thereof, conferred no power to grant land in Alabama which was below usual high water mark at the time Alabama was admitted into the union.

Page 44 U. S. 213

This case was brought up by writ of error from the Supreme Court of Alabama.

It was an ejectment brought by the plaintiff in error in the Circuit Court (State Court) of Alabama to recover a lot in the city of Mobile, described as follows, *viz.:* bounded on the north by the south boundary of what was originally designated as John Forbes & Co.'s canal, on the west by a lot now or lately in the occupancy of, or claimed by, _____ Ezel, on the east by the channel of the river, and on the south by Government Street.

The case was similar in its character to the two cases of *City of Mobile v. Emanuel et al.,* reported in 1 How. 95, and *Pollard's Lessee v. Files,* 2 How. 592. In the report of the first of these cases, the locality of the ground and nature of the case are explained.

In 42 U. S. 1 How. 97, it is stated that the court charged the jury, that,

"if the place in controversy was, subsequent to the admission of this State into the union, below both high and low water mark, then Congress had no right to

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 2_

Twuana M. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 2021

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YO
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20

grant it; and if defendants were in possession, the plaintiffs could not oust them by virtue of the act of Congress."

And at page 42 U. S. 98, it is remarked, that

"the Supreme Court of Alabama did not decide the first point raised in the bill of exceptions, *viz.,* that Congress had no right to grant the land to the city of Mobile."

In the case of *Pollard's lessee v. Files,* it is remarked ( 43 U. S. 2 How. 601) that

"the arguments of both counsel as to the right of the state of Alabama over navigable water in virtue of her sovereignty, are omitted, because the opinion of the court does not touch upon that point."

In the present case, there were objections made upon the trial below to the admission of certain evidence which was offered by the defendant; but these objections were not pressed, and the whole argument turned upon the correctness of the charge of the court, which was as follows:

"That if they believed that the premises sued for were below usual high water mark, at the time the state of Alabama was admitted into the union, then the act of Congress, and the patent in pursuance thereof, could give the plaintiff no title, whether the waters had receded by the labor of man only, or by allusion; to which plaintiff excepted, and the court signs and seals this bill of exceptions."

Under these instructions the jury found for the defendant, and the Supreme Court of Alabama affirmed the judgment. From this last court the case was brought up, under the 25th section of the Judiciary Act, and the only question was upon the correctness of the above instructions.

Twuana M. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 20 21

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 2

11.13 2019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YO
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20

# ATTACHMENT

# DECEMBER 9, 1945 INTERNATIONAL ORGANIZATION IMMUNITIES ACT RELINQUISHED EVERY PUBLIC OFFICE OF THE UNITED STATES TO THE U.N.

Mar 6 at 11:49 PM

# Sunday, March 6, 2016

## December 9th 1945 International Organization Immunities Act relinquished every public office of the United States to the U N.

Guess WHAT, ALL those IDIOTS in CON-gress and State Capitols are no longer citizens!!!

# As FOREIGNERS they have no JURISDICTION over We the People!!!

++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++

· December 26th 1933 49 Statute 3097 Treaty Series 881 (Convention on Rights and Duties of States) stated CONGRESS replaced STATUTES with international law, placing all states under international law.(this was an act of TREASON and SEDITION !! CON-gress had no authority over or to alter State Constitutions) · December 9th 1945 International Organization Immunities Act relinquished every public office of the United States to the United Nations.
· 22 CFR 92.12-92.31 FR Heading "Foreign Relationship" states that an oath is required to take office.
· Title 8 USC 1481 stated once an oath of office is taken citizenship is relinquished, thus you become a foreign entity, agency, or state. That means every public office is a foreign state, including all political subdivisions. (i.e. every single court is considered a separate foreign entity)
· Title 22 USC (Foreign Relations and Intercourse) Chapter 11 identifies all public officials as foreign agents.
· Title 28 USC 3002 Section 15A states that the United States is a Federal Corporation and not a Government, including the Judiciary Procedural Section.
· Federal Rules of Civil Procedure (FRCP) 4j states that the Court jurisdiction and immunity fall under a foreign State.
· The 11th Amendment states "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." (A foreign entity, agency, or state cannot bring any suit against a United States citizen without abiding the following procedure.)
· Title 22 CFR 93.1-93.2 states that the Department of State has to be notified of any suit, and in turn has to notify the United States citizen of said suit.
· Title 28 USC 1330 states that the United States District Court has to

1

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 2_

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW
NO. 01MA5077686
QUALIFIED IN KINGS COUNT
MY COMMISSION EXPIRES 08-1_

Tequina M. ____
Commissioner of Deeds #: 3-7363
Queens County
Expiration Date: 3/1 20 21-_

grant permission for the suit to be pursued once the court has been supplied sufficient proof that the United States citizen is actually a corporate entity.

· Title 28 USC 1608 I have Absolute Immunity as a Corporation
· Title 28 USC 1602-1611 (Foreign Sovereign Immunities Act) allows the jurisdiction of a court to be challenged, and a demand of proper jurisdiction to be stated.
· July 27th 1868 15 Statutes at Large Chapter 249 Section 1 "Acts Concerning American Citizens in a Foreign State", expatriation, is what is broken when jurisdiction is demanded, and it is not met with an answer.
· Under the Federal Rules of Civil Procedure 12b 6 the prosecution has failed to provide adequate proof that the parties involved in this situation are actually corporate entities. I have provided ample proof that the prosecution and other agents are actually corporations.
· 1950 81st Congress Investigated the Lawyers Guild and determined that the B.A.R. Association is founded and ran by communists under definition. Thus any elected official that is a member of the B.A.R. will only be loyal to the B.A.R. and not the people.

**TITLE 22--FOREIGN RELATIONS AND INTERCOURS CHAPTER 11--FOREIGN AGENTS AND PROPAGANDA SUBCHAPTER II--REGISTRATION OF FOREIGN PROPAGANDISTS**

2

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 24

Teruna M. Ajemia
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 2021

11/13/19

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW Y
NO. 01MA5077596
QUALIFIED IN KINGS COUNT
MY COMMISSION EXPIRES 08-12-

# ATTACHMENT

## What is Land Mandate

# THE LAND MANDATE

"The United States never held any municipal sovereignty, jurisdiction, right of soil in Alabama or any of the new states which were formed.  The United States has no Constitutional capacity to exercise municipal jurisdiction, sovereignty or eminent domain, within the limits of a state of elsewhere, except   in the cases in which it is expressly granted."  [Pollard v. Hagan, 44 U.S.C. 213, 221, 223]

In the Supreme-Court-Decision by the Judge-Theo-H. McCaleb on the date: 6:19:1848 C.E. for the declaring of the United: States of the non-owners of the land of the Ancient-Ones/Mound-Builders (Uaxashaktun) and for the declaring of the lawful-owners as the heirs of the Henry:Turner (Moorish National).  By the Uaxashaktun mounds of the North-American for the carbon-dating of the years before the Jesus-Christ for the referring by the United-Nations and Smithsonian-Institute.  In the year 1928, for the laying of the claim by the (sovereign) Moors n the demarcation of the Ethiopia across the Africa, Great-Atlantis (North/Central/South-America) and Caribbean by the Noble Drew:Ali, in an **Express-Trust (Deed) in the chapter: 47, in the Holy-Koran of the Moorish/Science/ Temple**/ of/America/A/Religious/Book for the recording in the Mecca and for the filing of the documentation from the Proper-Custody of the Religious Corporation/Trust-Document on the date: 8:1:1928, the Document-No. 1010595: Book 521: Page: 79: of the county of the Cook of the State of the Illinois by the Recorder of the Deeds.

Twuana N. Janvier  11/13/19
Commissioner of Deeds #3-7353
Queens County
Expiration Date: 8/1 2031

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21
11/13/2019

DANIEL MALDONADO  11/13/19
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-2023

# ATTACHMENT:

## Supreme Court Case

## <u>Lufkin County</u>

# Supreme Court Case

THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT No. 14-20333 Summary Calendar UNITED STATES OF AMERICA, Plaintiff - Appellee v. JOHN PARKS TROWBRIDGE, JR., Defendant - Appellant Appeal from the United States District Court for the Southern District of Texas No. 4:14-CV-27 Before HIGGINBOTHAM, JONES, and HIGGINSON, Circuit Judges. PER CURIAM:* John Parks Trowbridge ("Trowbridge") appeals the district court's grant of summary judgment in favor of the government, which ordered Trowbridge's income tax liabilities for 1993 through 1997 reduced to judgment, the associated tax liens on the real property foreclosed, and the real property sold. Trowbridge has not contested the validity of the tax liabilities or his ownership * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4. United States Court of Appeals Fifth Circuit FILED February 3, 2015 Lyle W. Cayce Clerk C No. 14-20333 of the real property at issue. He has therefore waived those issues. Yohey v.

Collins, 985 F.2d 222, 224–25 (5th Cir. 1993). Instead, Trowbridge argues that Harris County is not in the United States and that he is not a citizen of the United States. He contends that this means the district court did not have subject matter jurisdiction over tax actions against residents of states and that he is not subject to federal income taxes. This court has already rejected as frivolous the argument that district courts lack subject matter jurisdiction over tax actions against residents of states. United States v. Masat, 948 F.2d 923, 934 (5th Cir. 1991). This court has also stated that 26 U.S.C. §§ 7602(a) and 7604, which authorize the issuance and enforcement of IRS summonses, "are federal laws that the district court has jurisdiction to consider under 28 U.S.C. § 1331." United States v. Henderson, 209 F. App'x 401, 402 (5th Cir. 2006). Moreover, 28 U.S.C. § 1340 explicitly grants district courts jurisdiction in internal revenue cases and 28 U.S.C. § 1345 explicitly grants jurisdiction for civil suits commenced by the United States. Trowbridge's argument that he is not a citizen of the United States is equally frivolous. He presents "shopworn arguments characteristic of tax protestor rhetoric that has been universally rejected by this and other courts." Stearman v. Commissioner, 436 F.3d 533, 537 (5th Cir. 2006). This court has already held that the "citizens of Texas are subject to the Federal Tax Code."United States v. Price, 798 F.2d 111, 113 (5th Cir. 1986). We do not addresshis arguments further as there is "no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest these arguments have some colorable merit." Crain v. Commissioner, 737 F.2d1417 (5th Cir. 1984). They have no merit at all. This is not the first time Trowbridge has had these frivolous arguments rejected. In Trowbridge et al. v. Commissioner, T.C. Memo. 2003-164, 2003 WL 21278475, Trowbridge made similar arguments in contesting his 1991-1995 tax liabilities. The tax court imposed a $25,000 sanction. In contesting his 1996-1997 tax liabilities, Trowbridge again used similar arguments in the tax court; he was sanctioned a second time. Trowbridge et al. v. Commissioner, T.C. Memo. 2003-165, 2003 WL 21278414, at *10. Trowbridge appealed to this court and once again resorted to frivolous arguments. This court upheld the tax court's sanctions and imposed additional sanctions. Given Trowbridge's history of frivolous appeals, we GRANT Appellee's motion for sanctions pursuant to Fed. R. App. P. 38 in the amount of $8,000. We also order that Trowbridge be barred from filing any further appeals in this court until (1) the sanctions awarded by this court are fully paid; and (2) a district court certifies his appeal as having some arguable merit. See Smith v. McCleod, 946 F.2d 417, 418 (5th Cir. 1991). Trowbridge's motions are DENIED as moot. Accordingly, the order of the district court is AFFIRMED.

Twuana N. Jarvier    11/13/19
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 3/1 2031

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21

11.13.1019

DANIEL MALDONADO    11/12/19
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-2023

ATTACHMENT:


Supreme Court Case


<u>Knick v. Township</u>

(Slip Opinion)        OCTOBER TERM, 2018                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## KNICK v. TOWNSHIP OF SCOTT, PENNSYLVANIA, ET AL.

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 17–647.  Argued October 3, 2018—Reargued January 16, 2019—Decided June 21, 2019

The Township of Scott, Pennsylvania, passed an ordinance requiring that "[a]ll cemeteries . . . be kept open and accessible to the general public during daylight hours."  Petitioner Rose Mary Knick, whose 90-acre rural property has a small family graveyard, was notified that she was violating the ordinance.  Knick sought declaratory and injunctive relief in state court on the ground that the ordinance effected a taking of her property, but she did not bring an inverse condemnation action under state law seeking compensation.  The Township responded by withdrawing the violation notice and staying enforcement of the ordinance.  Without an ongoing enforcement action, the court held, Knick could not demonstrate the irreparable harm necessary for equitable relief, so it declined to rule on her request.  Knick then filed an action in Federal District Court under 42 U. S. C. §1983, alleging that the ordinance violated the Takings Clause of the Fifth Amendment.  The District Court dismissed her claim under *Williamson County Regional Planning Comm'n* v. *Hamilton Bank of Johnson City*, 473 U. S. 172, which held that property owners must seek just compensation under state law in state court before bringing a federal takings claim under §1983.  The Third Circuit affirmed.

*Held*:

  1. A government violates the Takings Clause when it takes property without compensation, and a property owner may bring a Fifth Amendment claim under §1983 at that time.  Pp. 5–20.

    (a) In *Williamson County*, the Court held that, as relevant here, a property developer's federal takings claim was "premature" because

Syllabus

he had not sought compensation through the State's inverse condemnation procedure. 473 U. S., at 197. The unanticipated consequence of this ruling was that a takings plaintiff who complied with *Williamson County* and brought a compensation claim in state court would—on proceeding to federal court after the unsuccessful state claim—have the federal claim barred because the full faith and credit statute required the federal court to give preclusive effect to the state court's decision. *San Remo Hotel, L. P.* v. *City and County of San Francisco*, 545 U. S. 323, 347. Pp. 5–6.

(b) This Court has long recognized that property owners may bring Fifth Amendment claims for compensation as soon as their property has been taken, regardless of any other post-taking remedies that may be available to the property owner. See *Jacobs* v. *United States*, 290 U. S. 13. The Court departed from that understanding in *Williamson County* and held that a taking gives rise not to a constitutional right to just compensation, but instead gives a right to a state law procedure that will eventually result in just compensation. Just two years after *Williamson County*, however, the Court returned to its traditional understanding of the Fifth Amendment, holding that the compensation remedy is required by the Constitution in the event of a taking. *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles*, 482 U. S. 304. A property owner acquires a right to compensation immediately upon an uncompensated taking because the taking itself violates the Fifth Amendment. See *San Diego Gas & Elec. Co.* v. *San Diego*, 450 U. S. 621, 654 (Brennan, J., dissenting). The property owner may, therefore, bring a claim under §1983 for the deprivation of a constitutional right at that time. Pp. 6–12.

(c) *Williamson County*'s understanding of the Takings Clause was drawn from *Ruckelshaus* v. *Monsanto Co.*, 467 U. S. 986, where the plaintiff sought to enjoin a federal statute because it effected a taking, even though the statute set up a mandatory arbitration procedure for obtaining compensation. *Id.*, at 1018. That case does not support *Williamson County*, however, because Congress—unlike the States—is free to require plaintiffs to exhaust administrative remedies before bringing constitutional claims. *Williamson County* also analogized its new state-litigation requirement to federal takings practice under the Tucker Act, but a claim for just compensation brought under the Tucker Act is not a prerequisite to a Fifth Amendment takings claim—it *is* a Fifth Amendment takings claim. *Williamson County* also looked to *Parratt* v. *Taylor*, 451 U. S. 527. But *Parratt* was not a takings case at all, and the analogy from the due process context to the takings context is strained. The poor reasoning of *Williamson County* may be partially explained by the cir-

Syllabus

cumstances in which the state-litigation issue reached the Court, which may not have permitted the Court to adequately test the logic of the state-litigation requirement or consider its implications. Pp. 12–16.

(d) Respondents read too broadly statements in prior opinions that the Takings Clause "does not provide or require that compensation shall be actually paid in advance of the occupancy of the land to be taken. But the owner is entitled to reasonable, certain and adequate provision for obtaining compensation" after a taking. *Cherokee Nation* v. *Southern Kansas R. Co.*, 135 U. S. 641, 659. Those statements concerned requests for injunctive relief, and the availability of subsequent compensation meant that such an equitable remedy was not available. Simply because the property owner was not entitled to injunctive relief at the time of the taking does not mean there was no violation of the Takings Clause at that time. The history of takings litigation provides valuable context. At the time of the founding, there usually was no compensation remedy available to property owners, who could obtain only retrospective damages, as well as an injunction ejecting the government from the property going forward. But in the 1870s, as state courts began to recognize implied rights of action for damages under the state equivalents of the Takings Clause, they declined to grant injunctions because property owners had an adequate remedy at law. Congress enabled property owners to obtain compensation for takings by the Federal Government when it passed the Tucker Act in 1887, and this Court subsequently joined the state courts in holding that the compensation remedy is required by the Takings Clause itself. Today, because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable. As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin government action effecting a taking. Pp. 16–19.

2. The state-litigation requirement of *Williamson County* is overruled. Several factors counsel in favor of this decision. *Williamson County* was poorly reasoned and conflicts with much of the Court's takings jurisprudence. Because of its shaky foundations, the rationale for the state-litigation requirement has been repeatedly recast by this Court and the defenders of *Williamson County*. The state-litigation requirement also proved to be unworkable in practice because the *San Remo* preclusion trap prevented takings plaintiffs from ever bringing their claims in federal court, contrary to the expectations of the *Williamson County* Court. Finally, there are no reliance interests on the state-litigation requirement. As long as post-taking compensation remedies are available, governments need not

Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 20 21 (6)
11/13/19

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 24
11·13·2019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077696
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20 23
11/12/19

4                    KNICK *v.* TOWNSHIP OF SCOTT

Syllabus

fear that federal courts will invalidate their regulations as unconsti-
tutional. Pp. 20–23.

862 F. 3d 310, vacated and remanded.

ROBERTS, C. J., delivered the opinion of the Court, in which THOMAS,
ALITO, GORSUCH, and KAVANAUGH, JJ., joined. THOMAS, J., filed a con-
curring opinion. KAGAN, J., filed a dissenting opinion, in which GINS-
BURG, BREYER, and SOTOMAYOR, JJ., joined.

Twuana N. Janvie
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8|| 2019 (2021)

11/13/19

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21
11.13.2019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20

# ATTACHMENT

# UNITED STATES COURT OF APPEAL'S

# <u>TREZEVANT v. CITY OF TAMPA</u>

**TREZEVANT v. CITY OF TAMPA**

Nos. 83-3370, 83-3038.

---

741 F.2d 336 (1984)

*James C. TREZEVANT, Plaintiff-Appellant, v. CITY OF TAMPA, a municipal corporation, et al., Defendants-Appellees. James C. TREZEVANT, Plaintiff-Appellee, v. CITY OF TAMPA, a municipal corporation, Hillsborough County Board of Criminal Justice, et al., Defendants-Appellants.*

United States Court of Appeals, Eleventh Circuit.

September 6, 1984.

Rehearing and Rehearing Denied October 11, 1984.


**Attorney(s) appearing for the Case**

*Robert V. Williams, Tampa, Fla., for James C. Trezevant.*

*Chris W. Altenbernd, Tampa, Fla., for defendants-appellees in No. 83-3370.*

*Bernard C. Silver, Asst. City Atty., Tampa, Fla., City of Tampa.*

*Donald G. Greiwe, Chris W. Altenbernd, Tampa, Fla., for Hillsborough County Bd. of Criminal Justice.*

*Before FAY, VANCE and HATCHETT, Circuit Judges.*

---

Rehearing and Rehearing En Banc Denied October 11, 1984.

FAY, Circuit Judge:

Twuana N. Danvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 2021

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20-23

In Florida a motorist who receives a traffic citation may sign a promise to appear or post a bond pending court disposition. Mr. Trezevant elected to post a bond, had the necessary cash with him to do so, but found himself in a holding cell behind bars. Feeling that such a procedure deprived him of his civil rights (to remain at liberty), he brought this action. The jury agreed with his contentions and we affirm.

This matter was tried before the Honorable William J. Castagna, United States District Court, Middle District of Florida, beginning on October 20, 1983. The amended complaint then before the trial court contained four counts. Count I charged that the City of Tampa and Officer Eicholz deprived Mr. Trezevant of his civil rights by improperly arresting him. Count II similarly charged the Hillsborough County Board of Criminal Justice ("HBCJ") and Deputy Edwards with improperly incarcerating Mr. Trezevant. Counts III and IV were included as pendent common law and state law claims against the same defendants. Count III was voluntarily dismissed by the plaintiff and Count IV was disposed of on a motion for directed verdict against the plaintiff.[1] The jury returned a verdict of $25,000 in favor of the plaintiff and against the HCBJ and the City of Tampa. The individual defendants were absolved of all liability.

The case is now before this court on cross appeals pursuant to 28 U.S.C. § 1291. Mr. Trezevant has appealed the amount of attorney's fees awarded to him and the City of Tampa and the HBCJ have appealed the judgment against them. The parties have raised multiple issues on appeal but we find that a determination of three is dispositive of the entire matter. These three issues are whether the evidence supports the verdict rendered by the jury; whether the amount of the verdict rendered is excessive; and whether the trial court erred in the amount of attorney's fees awarded pursuant to 42 U.S.C. § 1988.

## FACTS

On the morning of April 23, 1979, the plaintiff, James C. Trezevant, was en route from his home in northwest Hillsborough County to his office in central Tampa. When he reached the intersection of Habana Avenue and Columbus Drive he stopped for a red light, he was third in line at the intersection. When the light changed, Mr. Trezevant and the two cars in front of him proceeded through the intersection. Just south of the intersection the other two cars came to a sudden stop and turned into a parking lot. In order to avoid a collision, Mr. Trezevant came to a screeching halt. Having avoided an accident, he then proceeded on. Six or seven blocks later, Mr. Trezevant was stopped by Officer Eicholz of the Tampa police department and was issued a citation for reckless driving.[2] Officer Eicholz explained to Mr. Trezevant that if Trezevant did not sign the citation he would have to post a bond. Mr. Trezevant elected to go to central booking and post a bond.

Twuana N. Jarrett
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/11 20 21(4)

11/13/19(e)

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21
11.13.2019

DANIEL MALDONADO    11/13/19
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20-23

Central booking has two entrances. In 1979, one of the entrances was used by bail bondsmen and lawyers to post bail bonds. Through a series of halls, this entrance leads to a glass window adjacent to the central booking desk. The only other entrance was used by policemen who were taking arrestees to be booked. This second entrance opened into a large room adjacent to the booking desk. Officer Eicholz escorted Mr. Trezevant to central booking and when they arrived he frisked Mr. Trezevant and took him through the door normally

[741 F.2d 339]

used by policemen with arrestees in custody. Officer Eicholz walked up to the central booking desk and presented the jailer on duty with Mr. Trezevant and with the citations that Mr. Trezevant had refused to sign. The jailer took Mr. Trezevant's valuables and his belt and shoes and placed Mr. Trezevant in a holding cell until he could be processed. Mr. Trezevant was in the holding cell for a total of twenty-three minutes.

Mr. Trezevant always had enough cash to bond himself out. No one ever told Mr. Trezevant what he was being incarcerated for; he was not allowed to call an attorney before he was incarcerated; and, he was incarcerated with other persons who were under arrest for criminal violations. Further, while he was being held in the holding cell, Mr. Trezevant suffered severe back pain and his cries for medical assistance were completely ignored.

Mr. Trezevant's complaint centers around the fact that he was incarcerated for a civil infraction. It is true that because Mr. Trezevant could not produce his vehicle registration he could have been arrested. However, it is also true that no one ever thought that Mr. Trezevant was not the owner of the car he was driving. The only reason that he was escorted to central booking was that he had elected to post a bond for the civil infraction of reckless driving. Officer Eicholz consistently maintained that he did not arrest Mr. Trezevant.

## SUFFICIENCY OF THE EVIDENCE

The City of Tampa and the HBCJ contend that the trial court erred in failing to grant a directed verdict in their favor. A directed verdict decides contested substantive issues as a matter of law, thus we apply the same standard as was applied by the district court:

Courts view all the evidence, together with all logical inferences flowing from the evidence, in the light most favorable to the non-moving party....... [I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial

Wilana M. Jame ─ 11/13/19
Williana N. Jame
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 3/1 2021

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 2
11.13.2019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 03-29-23
11/13/19

judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury.

*Neff v. Kehoe,* 708 F.2d 639 (11th Cir.1983) (*quoting Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969)).

Applying this standard to the case at bar, the City of Tampa and HBCJ would have us find that there was no evidence of a policy that caused the deprivation of the plaintiff's rights. They would each have us look at their actions in this matter individually. The City of Tampa contends that Officer Eicholz properly escorted Mr. Trezevant to central booking and turned him over to HBCJ for processing. The City argues that once Officer Eicholz reached the booking desk and handed the citations to the deputy on duty, the City was absolved of all further responsibility. Even though Officer Eicholz was present and observed that Mr. Trezevant was being incarcerated, the City believes that Officer Eicholz had no responsibility to object to the incarceration.

The HBCJ, on the other hand, argues that it did nothing wrong because all that its personnel did was accept a prisoner from Officer Eicholz on citations that were marked for arrest.[1] The HBCJ would have us hold that their deputy did not do anything wrong because he believed in good faith that Mr. Trezevant was under arrest and that the deputy had no obligation to make any inquiry of Officer Eicholz concerning Mr. Trezevant's status. We cannot agree with either the city or the HBCJ.

The United States Court of Appeals for the Fifth Circuit has recently dealt with a similar legal issue. In *Garris v. Rowland,* 678 F.2d 1264 (5th Cir.1982), a warrant was issued and Mr. Garris was arrested even though a follow-up investigation prior to

[741 F.2d 340]

Mr. Garris' arrest had revealed that the charges against Mr. Garris were without substance. The Court found that while the City of Fort Worth Police Department had a policy that required follow-up investigations by a second police officer, there was no policy to coordinate the follow-up investigations with the original investigation so as to prevent the arrest of innocent people:

There was no policy or method providing for cross-referencing of information within the department to prevent `unfounded' arrests such as occurred here, nor was there a policy providing for the follow-up investigator ... to check with the original investigator ..., who in this case was aware of Rowland's intention to arrest Garris and could have prevented such action. In summary, the record establishes that during this entire police operation, leading up to Garris' unlawful arrest, numerous mistakes occurred, all of which resulted from various officers carrying out the policies and procedures of the Fort Worth Police Department.

Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/ 20 2/ 6

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 2

11.13.2019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20-23

*Garris,* 678 F.2d at 1275. We find this reasoning to be persuasive.

In the case at bar, Mr. Trezevant's incarceration was the result of numerous mistakes which were caused by the policemen and deputies carrying out the policies and procedures of the City of Tampa and the HBCJ. There was certainly sufficient evidence for the jury to find, as it did, that pursuant to official policy Officer Eicholz escorted Mr. Trezevant to central booking where he was to be incarcerated until the HBCJ personnel could process the paper work for his bond. We cannot view the actions of Officer Eicholz and the jailer in a vacuum. Each was a participant in a series of events that was to implement the official joint policy of the City of Tampa and the HBCJ.[4] The failure of the procedure to adequately protect the constitutional rights of Mr. Trezevant was the direct result of the inadequacies of the policy established by these defendants. The trial court correctly denied the motions for directed verdict and submitted the case to the jury.

In *Gilmere v. City of Atlanta,* 737 F.2d 894 (11th Cir.1984), this court explained that a municipality may be liable under 42 U.S.C. § 1983 (1982) if unconstitutional action is taken to implement or execute a policy statement, ordinance, regulation or officially adopted and promulgated decision. *Gilmere* at 901. Liability may also attach where the unconstitutional deprivation is "visited pursuant to government `custom' even though such custom has not received formal approval through the body's official decision making channels." *Gilmere* at 901 (quoting *Monell v. Department of Social Services,* 436 U.S. 658, at 690-91, 98 S.Ct. 2018 at 2035-36, 56 L.Ed.2d 611, *rev'g in part Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). However, the "official policy or custom must be the moving force of the constitutional violation" before civil liability will attach under § 1983. *Gilmere,* 737 F.2d at 901 (*quoting Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981)).

In *Gilmere,* the plaintiff based her claim on the theory that the constitutional deprivation was the result of official custom; she made no claim that it was the result of official policy. However, our court found that the evidence conclusively showed that the municipal defendant had no official custom that caused the alleged constitutional deprivation. In the case at bar, however, there was sufficient evidence for the jury to find that Mr. Trezevant's unconstitutional incarceration was the result of an official policy. Officer Eicholz escorted Mr. Trezevant to central booking and the HBCJ deputies then processed Mr. Trezevant in the normal course of business and in accordance with what they considered to be governmental policy. The fact that no motorist prior to Mr. Trezevant had elected to not sign a citation but rather post a bond is hardly justification for having no procedure. The record is devoid of any explanation as to why Mr. Trezevant was not allowed to use the entrance and

Twuana N. Jarvis
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1/20 /

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 2

11.13.2019

741 F.20 891
DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20-23

## THE AMOUNT OF THE AWARD

The defendants have also challenged the amount of the award and contend that the amount is excessive. The standard for review of this issue was stated in *Del Casal v. Eastern Airlines, Inc.,* 634 F.2d 295 (5th Cir. Unit B 1981):'

In order for an award to be reduced, `the verdict must be so gross or inordinately large as to be contrary to right reason.' Machado v. States Marine-Isthmian Agency, Inc., 411 F.2d 584, 586 (5th Cir. 1969). The Court `will not disturb an award unless there is a clear showing that the verdict is excessive as a matter of law.' Anderson v. Eagle Motor Lines, Inc., 423 F.2d 81, 85 (5th Cir. 1970). The award, in order to be overturned must be `grossly excessive' or `shocking to the conscience.' La-Forest v. Autoridad de las Fuentas Fluviales, 536 F.2d 443 (1st Cir.1976).

There was evidence of Mr. Trezevant's back pain and the jailer's refusal to provide medical treatment and Mr. Trezevant is certainly entitled to compensation for the incarceration itself and for the mental anguish that he has suffered from the entire episode. This award does not "shock the court's conscience" nor is it "grossly excessive" or "contrary to right reason." Finally, there is no indication that the jury considered this amount to be punitive as opposed to compensatory.

## ATTORNEY'S FEES

Mr. Trezevant has challenged the trial court's determination to sever the time spent on the unsuccessful counts from the fee award and its determination not to enhance the fee award. In the order on fees, the trial court expressly considered the various factors delineated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), and also found that the pendent claims had been "clearly without merit".

The United States Supreme Court has recently interpreted 42 U.S.C. § 1988. It held:

[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not

Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 20 31 ,D    11/13/19

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 2 1
11.13.2019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20-23    11/13/19

considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983).

The trial court correctly recognized that the fee award should exclude the time spent on unsuccessful claims except to the extent that such time overlapped with related successful claims. The court then excluded the time spent on the unsuccessful claims because those claims were clearly without merit. Finally, the court considered the award in light of the work performed in this case and found that the award was a reasonable fee for the services performed. We find that the trial judge correctly applied the law and did not abuse his discretion.

## CONCLUSION

For the reasons stated, we find that the jury verdict was supported by sufficient [741 F.2d 342] evidence; the verdict was not excessive; and, the trial court did not abuse its discretion in setting the attorney fee award. Accordingly, the judgment of the district court is AFFIRMED.

## FootNotes

1. This ruling has not been appealed.
2. Officer Eicholz issued a total of three citations: (1) reckless driving, (2) failure to produce a motor vehicle registration certificate, and (3) refusal to sign a traffic citation. The parties agreed that the third citation was a nullity there being no such offense.
3. Some confusion surrounds the three citations. The jury could have concluded that Officer Eicholz had not completed the citations until after Mr. Trezevant was placed in the holding cell. The check showing that Mr. Trezevant had been arrested was apparently a mistake.
4. The City of Tampa was one member of the group that supervised the HBCJ.
5. Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* Ala., 661 F.2d 1206 (11th Cir.1981). *Del Casal* was decided on January 16, 1981, and, so, is binding precedent in the Eleventh Circuit.

Twuana M. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/ 20 21

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 24

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20 -23

**ATTACHMENT**

**UNITED STATES SUPREME COURT**

**CRANDALL v. STATE OF NEVADA**

# CRANDALL
v.
# STATE OF NEVADA.
### Supreme Court of United States.

No counsel appeared for the plaintiff in error, Crandall, nor was any brief filed in his behalf.

Mr. P. Phillips, who filed a brief for Mr. T.J.D. Fuller, for the State of Nevada.

Mr. Justice MILLER delivered the opinion of the court.

The question for the first time presented to the court by this record is one of importance. The proposition to be considered is the right of a State to levy a tax upon persons residing in the State who may wish to get out of it, and upon persons not residing in it who may have occasion to pass through it.

It is to be regretted that such a question should be submitted to our consideration, with neither brief nor argument on the part of plaintiff in error. But our regret is diminished by the reflection, that the principles which must govern its determination have been the subject of much consideration in cases heretofore decided by this court.

It is claimed by counsel for the State that the tax thus levied is not a tax upon the passenger, but upon the business of the carrier who transports him.

If the act were much more skillfully drawn to sustain this hypothesis than it is, we should be very reluctant to admit that any form of words, which had the effect to compel every person travelling through the country by the common and usual modes of public conveyance to pay a specific sum to the State, was not a tax upon the right thus exercised. The statute before us is not, however, embarrassed by any nice difficulties of this character. The language which we have just quoted is, that there shall be levied and collected a capitation tax upon every person leaving the State by any railroad or stage coach; and the remaining provisions of the act, which refer to this tax, only provide a mode of collecting it. The officers and agents of the railroad companies, and the proprietors of the stage coaches, are made responsible for this, and so become the collectors of the tax.

We shall have occasion to refer hereafter somewhat in detail, to the opinions of the judges of this court in The Passenger *40 Cases,· in which there were wide differences on several points involved in the case before us. In the case from New York then under consideration, the statute provided that the health commissioner should be entitled to demand and receive from the master of every vessel that should arrive in the port of New York, from a foreign port, one dollar and fifty cents for every cabin passenger, and one dollar for each steerage passenger, and from each coasting vessel, twenty-five cents for every person on board. That statute does not use language so strong as the Nevada statute, indicative of a personal tax on the passenger, but merely taxes the master of the vessel according to the number of his passengers; but the court held it to be a tax upon the passenger, and that the master was the agent of the State for its collection. Chief Justice Taney, while he differed from the majority of the court, and held the law to be valid, said of the tax levied by the analogous statute of Massachusetts, that "its payment is the condition upon which the State permits the alien passenger to come on shore and mingle with its citizens, and to reside among them. It is demanded of the captain, and not from every separate passenger, for convenience of collection. But the burden evidently falls upon the passenger, and he, in fact, pays it, either in the enhanced price of his passage or directly to the captain before he is allowed to embark for the voyage. The nature of the transaction, and the ordinary course of business, show that this must be so."

Having determined that the statute of Nevada imposes a tax upon the passenger for the privilege of leaving the State, or passing through it by the ordinary mode of passenger travel, we proceed to inquire if it is for that reason in conflict with the Constitution of the United States.

In the argument of the counsel for the defendant in error, and in the opinion of the Supreme Court of Nevada, which is found in the record, it is assumed that this question must be decided by an exclusive reference to two provisions of *41 the Constitution, namely: that which forbids any State; without the consent of Congress, to lay any imposts or duties on imports or exports, and that which confers on Congress the power to regulate commerce with foreign nations and among the several States.

The question as thus narrowed is not free from difficulties. Can a citizen of the United States travelling from one part of the Union to another be called an export? It may appear to apply the Passenger Cases to which we

Emanuel Taylor
Bonded Notary Public, New York State
No: RE726134008
Qualified in New York County
Commission Expires June 20, 21
11·19·2019

Tatiana N. Jarvis
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 11 20 21
11/13/19

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20
11/12/19

have already referred, that foreigners coming to this country were imports within the meaning of the Constitution, and the provision of that instrument that the migration or importation of such persons as any of the States then existing should think proper to admit, should not be prohibited prior to the year 1808, but that a tax might be imposed on such importation, was relied on as showing that the word import, applied to persons as well as to merchandise. It was answered that this latter clause had exclusive reference to slaves, who were property as well as persons, and therefore proved nothing. While some of the judges who concurred in holding those laws to be unconstitutional, gave as one of their reasons that they were taxes on imports, it is evident that this view did not receive the assent of a majority of the court. The application of this provision of the Constitution to the proposition which we have stated in regard to the citizen, is still less satisfactory than it would be to the case of foreigners migrating to the United States.

But it is unnecessary to consider this point further in the view which we have taken of the case.

As regards the commerce clause of the Constitution, two propositions are advanced on behalf of the defendant in error. 1. That the tax imposed by the State on passengers is not a regulation of commerce. 2. That if it can be so considered, it is one of those powers which the States can exercise, until Congress has so legislated, as to indicate its intention to exclude State legislation on the same subject.

The proposition that the power to regulate commerce, as granted to Congress by the Constitution, necessarily excludes ˙42 the exercise by the States of any of the power thus granted, is one which has been much considered in this court, and the earlier discussions left the question in much doubt. As late as the January Term, 1849, the opinions of the judges in The Passenger Cases show that the question was considered to be one of much importance in those cases, and was even then unsettled, though previous decisions of the court were relied on by the judges themselves as deciding it in different ways. It was certainly, so far as those cases affected it, left an open question.

In the case of Cooley v. Board of Wardens, four years later, the same question came directly before the court in reference to the local laws of the port of Philadelphia concerning pilots. It was claimed that they constituted a regulation of commerce, and were therefore void. The court held that they did come within the meaning of the term "to regulate commerce," but that until Congress made regulations concerning pilots the States were competent to do so.

Perhaps no more satisfactory solution has ever been given of this vexed question than the one furnished by the court in that case. After showing that there are some powers granted to Congress which are exclusive of similar powers in the States because they are declared to be so, and that other powers are necessarily so from their very nature, the court proceeds to say, that the authority to regulate commerce with foreign nations and among the States, includes within its compass powers which can only be exercised by Congress, as well as powers which, from their nature, can best be exercised by the State legislatures; to which latter class the regulation of pilots belongs. "Whatever subjects of this power are in their nature national, or admit of one uniform system or plan of regulation, may justly be said to be of such a nature as to require exclusive legislation by Congress." In the case of Gilman v. Philadelphia,⋴ this doctrine is reaffirmed, and under it a bridge across a stream navigable from the ocean, authorized by State law, was held to be ˙43 well authorized in the absence of any legislation by Congress affecting the matter.

It may be that under the power to regulate commerce among the States, Congress has authority to pass laws, the operation of which would be inconsistent with the tax imposed by the State of Nevada, but we know of no such statute now in existence. Inasmuch, therefore, as the tax does not itself institute any regulation of commerce of a national character, or which has a uniform operation over the whole country, it is not easy to maintain, in view of the principles on which those cases were decided, that it violates the clause of the Federal Constitution which we have had under review.

But we do not concede that the question before us is to be determined by the two clauses of the Constitution which we have been examining.

The people of these United States constitute one nation. They have a government in which all of them are deeply interested. This government has necessarily a capital established by law, where its principal operations are conducted. Here sits its legislature, composed of senators and representatives, from the States and from the people of the States. Here resides the President, directing through thousands of agents, the execution of the laws over all this vast country. Here is the seat of the supreme judicial power of the nation, to which all its citizens have a right to resort to claim justice at its hands. Here are the great executive departments, administering the offices of the mails, of the public lands, of the collection and distribution of the public revenues, and of our foreign relations. These are all established and conducted under the admitted powers of the Federal government. That government has a right to call to this point any

Twauna N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 20 2/2

Sworn Translation by
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 24

11.19.2019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA6077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20-23

11/13/19

or all of its citizens to aid in its service, as members of the Congress, of the courts, of the executive departments, and to fill all its other offices; and this right cannot be made to depend upon the pleasure of a State over whose territory they must pass to reach the point where these services must be rendered. The government, also, has its offices of secondary ˙44 importance in all other parts of the country. On the sea-coasts and on the rivers it has its ports of entry. In the interior it has its land offices, its revenue offices, and its sub-treasuries. In all these it demands the services of its citizens, and is entitled to bring them to those points from all quarters of the nation, and no power can exist in a State to obstruct this right that would not enable it to defeat the purposes for which the government was established.

The Federal power has a right to declare and prosecute wars, and, as a necessary incident, to raise and transport troops through and over the territory of any State of the Union.

If this right is dependent in any sense, however limited, upon the pleasure of a State, the government itself may be overthrown by an obstruction to its exercise. Much the largest part of the transportation of troops during the late rebellion was by railroads, and largely through States whose people were hostile to the Union. If the tax levied by Nevada on railroad passengers had been the law of Tennessee, enlarged to meet the wishes of her people, the treasury of the United States could not have paid the tax necessary to enable its armies to pass through her territory.

But if the government has these rights on her own account, the citizen also has correlative rights. He has the right to come to the seat of government to assert any claim he may have upon that government, or to transact any business he may have with it. To seek its protection, to share its offices, to engage in administering its functions. He has a right to free access to its sea-ports, through which all the operations of foreign trade and commerce are conducted, to the sub-treasuries, the land offices, the revenue offices, and the courts of justice in the several States, and this right is in its nature independent of the will of any State over whose soil he must pass in the exercise of it.

The views here advanced are neither novel nor unsupported by authority. The question of the taxing power of the States, as its exercise has affected the functions of the Federal government, has been repeatedly considered by this ˙45 court, and the right of the States in this mode to impede or embarrass the constitutional operations of that government, or the rights which its citizens hold under it, has been uniformly denied.

The leading case of this class is that of McCulloch v. Maryland.˙ The case is one every way important, and is familiar to the statesman and the constitutional lawyer. The Congress, for the purpose of aiding the fiscal operations of the government, had chartered the Bank of the United States, with authority to establish branches in the different States, and to issue notes for circulation. The legislature of Maryland had levied a tax upon these circulating notes, which the bank refused to pay, on the ground that the statute was void by reason of its antagonism to the Federal Constitution. No particular provision of the Constitution was pointed to as prohibiting the taxation by the State. Indeed, the authority of Congress to create the bank, which was strenuously denied, and the discussion of which constituted an important element in the opinion of the court, was not based by that opinion on any express grant of power, but was claimed to be necessary and proper to enable the government to carry out its authority to raise a revenue, and to transfer and disburse the same. It was argued also that the tax on the circulation operated very remotely, if at all, on the only functions of the bank in which the government was interested. But the court, by a unanimous judgment, held the law of Maryland to be unconstitutional.

It is not possible to condense the conclusive argument of Chief Justice Marshall in that case, and it is too familiar to justify its reproduction here; but an extract or two, in which the results of his reasoning are stated, will serve to show its applicability to the case before us. "That the power of taxing the bank by the States," he says, "may be exercised so as to destroy it, is too obvious to be denied. But taxation is said to be an absolute power which acknowledges no other limits than those prescribed in the Constitution, and, like ˙46 sovereign power of any description, is trusted to the discretion of those who use it. But the very terms of this argument admit that the sovereignty of the State in the article of taxation is subordinate to, and may be controlled by, the Constitution of the United States." Again he says, "We find then, on just theory, a total failure of the original right to tax the means employed by the government of the Union for the execution of its powers. The right never existed, and the question of its surrender cannot arise." ... . "That the power to tax involves the power to destroy; that the power to destroy may defeat and render useless the power to create; that there is a plain repugnance in conferring on one government a power to control the constitutional measures of another, which other, with respect to those very means, is declared to be supreme over that which exerts the control, are propositions not to be denied. If the States may tax one instrument employed by the government in the execution of its powers, they may tax any and every other

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 2_

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20˙23

instrument. They may tax the mail; they may tax the mint; they may tax patent rights; they may tax the papers of the custom-house; they may tax judicial process; they may tax all the means employed by the government to an excess which would defeat all the ends of government. This was not intended by the American people. They did not design to make their government dependent on the States."

It will be observed that it was not the extent of the tax in that case which was complained of, but the right to levy any tax of that character. So in the case before us it may be said that a tax of one dollar for passing through the State of Nevada, by stage coach or by railroad, cannot sensibly affect any function of the government, or deprive a citizen of any valuable right. But if the State can tax a railroad passenger one dollar, it can tax him one thousand dollars. If one State can do this, so can every other State. And thus one or more States covering the only practicable routes of travel from the east to the west, or from the north to the south, may totally prevent or seriously burden all transportation of passengers from one part of the country to the other.

·47 A case of another character in which the taxing power as exercised by a State was held void because repugnant to the Federal Constitution, is that of Brown v. The State of Maryland.·

The State of Maryland required all importers of foreign merchandise, who sold the same by wholesale, by bale or by package, to take out a license, and this act was claimed to be unconstitutional. The court held it to be so on three different grounds: first, that it was a duty on imports; second, that it was a regulation of commerce; and third, that the importer who had paid the duties imposed by the United States, had acquired a right to sell his goods in the same original packages in which they were imported. To say nothing of the first and second grounds, we have in the third a tax of a State declared to be void, because it interfered with the exercise of a right derived by the importer from the laws of the United States. If the right of passing through a State by a citizen of the United States is one guaranteed to him by the Constitution, it must be as sacred from State taxation as the right derived by the importer from the payment of duties to sell the goods on which the duties were paid.

In the case of Weston v. The City of Charleston. we have a case of State taxation of still another class, held to be void as an interference with the rights of the Federal government. The tax in that instance was imposed on bonds or stocks of the United States, in common with all other securities of the same character. It was held by the court that the free and successful operation of the government required it at times to borrow money; that to borrow money it was necessary to issue this class of national securities, and that if the States could tax these securities they might so tax them, as to seriously impair or totally destroy the power of the government to borrow. This case, itself based on the doctrines advanced by the court in McCulloch v. The State of Maryland, has been followed in all the recent cases involving State ·48 taxation of government bonds, from that of The People of New York v. Tax Commissioners,· to the decisions of the court at this term.

In all these cases the opponents of the taxes levied by the States were able to place their opposition on no express provision of the Constitution, except in that of Brown v. Maryland. But in all the other cases, and in that case also, the court distinctly placed the invalidity of the State taxes on the ground that they interfered with an authority of the Federal government, which was itself only to be sustained as necessary and proper to the exercise of some other power expressly granted.

In The Passenger Cases, to which reference has already been made, Justice Grier, with whom Justice Catron concurred, makes this one of the four propositions on which they held the tax void in those cases. Judge Wayne expresses his assent to Judge Grier's views; and perhaps this ground received the concurrence of more of the members of the court who constituted the majority than any other. But the principles here laid down may be found more clearly stated in the dissenting opinion of the Chief Justice in those cases, and with more direct pertinency to the case now before us than anywhere else. After expressing his views fully in favor of the validity of the tax, which he said had exclusive reference to foreigners, so far as those cases were concerned, he proceeds to say, for the purpose of preventing misapprehension, that so far as the tax affected American citizens it could not in his opinion be maintained. He then adds: "Living as we do under a common government, charged with the great concerns of the whole Union, every citizen of the United States from the most remote States or territories, is entitled to free access, not only to the principal departments established at Washington, but also to its judicial tribunals and public offices in every State in the Union... . For all the great purposes for which the Federal government was formed we are one people, with one common country. ·49 We are all citizens of the United States, and as members of the same community must have the right to pass and repass through every part of it without interruption, as freely as in our own States. And a tax imposed by a State, for entering its territories or harbors, is inconsistent with the rights which belong to citizens of other States as

Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 20 21-8

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21
11.13.2019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20 -23

members of the Union, and with the objects which that Union was intended to attain. Such a power in the States could produce nothing but discord and mutual irritation, and they very clearly do not possess it."

Although these remarks are found in a dissenting opinion, they do not relate to the matter on which the dissent was founded. They accord with the inferences which we have already drawn from the Constitution itself, and from the decisions of this court in exposition of that instrument.

Those principles, as we have already stated them in this opinion, must govern the present case.

Mr. Justice CLIFFORD.

I agree that the State law in question is unconstitutional and void, but I am not able to concur in the principal reasons assigned in the opinion of the court in support of that conclusion. On the contrary, I hold that the act of the State legislature is inconsistent with the power conferred upon Congress to regulate commerce among the several States, and I think the judgment of the court should have been placed exclusively upon that ground. Strong doubts are entertained by me whether Congress possesses the power to levy any such tax, but whether so or not, I am clear that the State legislature cannot impose any such burden upon commerce among the several States. Such commerce is secured against such legislation in the States by the Constitution, irrespective of any Congressional action.

The CHIEF JUSTICE also dissents, and concurs in the views I have expressed.

JUDGMENT REVERSED, and the case remanded to the Supreme Court of the State of Nevada, with directions to discharge the plaintiff in error from custody.

DANIEL MALDONADO  11/13/19
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 06-12-20  '23

Twuana N. Janvier
Commissioner of Deeds #: 3-7353
Queens County
Expiration Date: 8/1 20 21 20

11/13/19

Emani Pamela Taylor
Bonded Notary Public, New York State
No: RE726134009
Qualified in New York County
Commission Expires June 20, 21
11. 13. 2019

DANIEL MALDONADO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01MA5077596
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 05-12-20

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
EMANI PAMELA TAYLOR
Emani Pamela Taylor Bey a/k/a Jaquex Cheret et Bai

**DEFENDANTS**

*FILED*
2019 NOV 19 PM 7:28
RECEIVED NOV 19 2019
PRO SE OFFICE

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government
Plaintiff
- ❏ 2  U.S. Government
Defendant
- ❏ 3  Federal Question
*(U.S. Government Not a Party)*
- ❏ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | **PERSONAL INJURY** ❏ 365 Personal Injury - Product Liability | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | ❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | ❏ 368 Asbestos Personal Injury Product Liability | ❏ 820 Copyrights ❏ 830 Patent ❏ 840 Trademark | ❏ 430 Banks and Banking ❏ 450 Commerce |
| ❏ 151 Medicare Act | ❏ 340 Marine | | | ❏ 460 Deportation |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** ❏ 370 Other Fraud | **LABOR** ❏ 710 Fair Labor Standards Act | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending ❏ 380 Other Personal Property Damage | ❏ 720 Labor/Management Relations | ❏ 480 Consumer Credit ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 360 Other Personal Injury | ❏ 385 Property Damage Product Liability | ❏ 740 Railway Labor Act ❏ 751 Family and Medical | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 190 Other Contract | ❏ 362 Personal Injury - Medical Malpractice | | Leave Act ❏ 790 Other Labor Litigation | ❏ 890 Other Statutory Actions |
| ❏ 195 Contract Product Liability | | | ❏ 791 Employee Retirement Income Security Act | ❏ 891 Agricultural Acts |
| ❏ 196 Franchise | | | | ❏ 893 Environmental Matters ❏ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ❏ 896 Arbitration |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | **FEDERAL TAX SUITS** | ❏ 899 Administrative Procedure |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 950 Constitutionality of State Statutes |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | ❏ 540 Mandamus & Other ❏ 550 Civil Rights | ❏ 462 Naturalization Application ❏ 465 Other Immigration Actions | |
| | ❏ 448 Education | ❏ 555 Prison Condition ❏ 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ❏ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ❏ Yes    ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, _____, counsel for _____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☐  monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐  the complaint seeks injunctive relief,

☐  the matter is otherwise ineligible for the following reason

### DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

### RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (c), civil shall not be deemed to be "related" unless both cases are still pending before the court."

### NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?  ☐ Yes  ☐ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?  ☐ Yes  ☐ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?  ☐ Yes  ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?____ ☐ Yes  ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

### BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☐ Yes          ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes   (If yes, please explain)   ☐ No

I certify the accuracy of all information provided above.

Signature: _____

Last Modified: 11/27/2017